STATE OF MAINE
LINCOLN, ss.

SUPERIOR COURT
LOCATION: LINCOLN
CIVIL ACTION
DOCKET NO.: CV-16-28

**SCOTT JORDON, JR.**                    )
                                         )
         Plaintiffs                      )
                                         )
**v.**                                   )
                                         )          **AMENDED COMPLAINT**
**TOWN OF WALDOBORO,**                   )
**WALDOBORO POLICE DEPARTMENT,**         )
**AND WALDOBORO CHIEF OF POLICE**        )
**WILLIAM LABOMBARDE,**                  )
**WALDOBORO POLICE OFFICER**             )
**LAWRENCE W. HESSELTINE, JR,**          )          RECEIVED AND FIL
**WALDOBORO POLICE OFFICER**             )          LINCOLN COUNTY CO
**JEFFERY FULLER,**                      )
**WALDOBORO POLICE OFFICER**             )          JAN 1 2 2017
**ANDREW SANTHESON**                     )
                                         )
         Defendants                      )

NOW COMES the Plaintiff Scott Jordan, Jr. by and through undersigned counsel Karen

Wolfram of Fairfield & Associates, P.A., and complains against the above-named Defendants, their

agents, employees, servants and successors in office, and in support thereof alleges the following upon

information and belief:

## INTRODUCTION

1.       This is a tort action and a civil rights action brought pursuant to the Maine Civil Rights

Act 5 M.R.S.A. §4682, the Maine Constitution Article 1 §§ 1, 5, 6, and 6-A as well as the

Fourth, Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §

1983.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over the Defendants because of the State and Federal Constitutional violations under 5 M.R.S.A. §4682 and 42 U.S.C. § 1983 and the violations and torts alleged herein took place in this jurisdiction and/or the Defendants reside in the jurisdiction and/or have a principal place of business therein.

3.     Venue is properly laid in the Lincoln County Superior Court pursuant to 14 M.R.S.A. §§501 and 505.

4.     Plaintiff Scott Jordan (hereinafter "Plaintiff")  served a Notice of Claim pursuant to 14 MRSA §8107 upon Defendant, Town of Waldoboro and Defendant Waldoboro Police Department on March 3, 2014.

5.     All parties are properly joined pursuant to Rule 20 of the Maine  Rules of Civil Procedure.

### THE PARTIES

6.     Plaintiff, Scott Jordan, Jr. (hereinafter "Plaintiff") is a natural person who at all times material hereto resided in Standish, County of Cumberland, State of Maine.

7.     Defendant, Chief William Labombarde (hereinafter "Chief Labombarde") is and/or was at all times material hereto employed by the Town of Waldoboro as the Chief of Police for the Waldoboro Police Department located in Waldoboro, County of Lincoln, State of Maine. He had supervisory and direct interaction with the unreasonable investigation, the obtaining of the unlawful, invalid and/or defective search warrant, the unlawful arrest of Plaintiff, and the unlawful criminal proceedings instituted and/or continued to be instituted against Plaintiff, and had the duty to assure that all Waldoboro police officers were qualified to serve as police officers and to properly train, supervise, and discipline Waldoboro police officers and/or to assure that Waldoboro police officers were properly trained, supervised and disciplined. At all times

material hereto, Defendant Chief Labombarde acted under color of statutes, laws, ordinances, customs, and usage of Maine and the Town of Waldoboro and/or Waldoboro Police Department. He is sued in his individual, supervisory and official capacities.

8.      Defendant, Lawrence W. Hesseltine, Jr. (hereinafter "Hesseltine Jr.") is and/or was at all times material hereto a Waldoboro police officer employed by the Town of Waldoboro through the Waldoboro Police Department, located in Waldoboro, County of Lincoln, State of Maine. At all times material hereto, Defendant was acting under color of statutes, laws, ordinances, customs and usage of Maine and the Town of Waldoboro and/or  Waldoboro Police Department and within the course and scope of his employment. He is sued in his individual capacity.

9.      Defendant, Jeffery Fuller (hereinafter "Fuller") is and/or was at all times material hereto a Waldoboro police officer employed by the Town of Waldoboro through the Waldoboro Police Department, located in Waldoboro, County of Lincoln, State of Maine. At all times material hereto, Defendant was acting under color of statutes, laws, ordinances, customs and usage of Maine and Town of Waldoboro and/or Waldoboro Police Department and within the course and scope of his employment. He is sued in his individual capacity.

10.      Defendant Andrew Santheson (hereinafter "Santheson") is and/or was at all times material hereto, a Waldoboro reserve police officer employed by the Town of Waldoboro through the Waldoboro Police Department, located in Waldoboro, County of Lincoln, State of Maine. At all times material hereto, Defendant was acting under color of statutes, laws, ordinances, customs and usage of Maine and the Town of Waldoboro and/or Waldoboro Police Department and within the course and scope of his employment. He is sued in his individual capacity.

11.     Defendant, Town of Waldoboro is a municipal corporation located in the County of Lincoln, State of Maine and is responsible for hiring, directing, disciplining and supervising the Waldoboro Police Department.

12.     Defendant, Waldoboro Police Department (hereinafter "WPD") is a municipal service department of the Town of Waldoboro located in County of Lincoln, State of Maine that is under the direction and supervision of the Town of Waldoboro. Defendant Waldoboro Police Department and/or the Town of Waldoboro were responsible for training, supervision, and discipline of police officers, and/or responsible for ensuring training, supervision, and discipline of police officers including the named Defendants herein, Chief Labombarde, Hesseltine, Jr, Fuller, and Santheson.

13.      Upon information and belief, Defendant Town of Waldoboro and Defendant Waldoboro Police Department (hereinafter collectively "Municipal Defendants") are insured for the claims asserted in this matter as are Defendants Chief Labombarde, Hesseltine, Jr., Fuller, and Santheson. (hereinafter collectively "Police Officer Defendants").

## STATEMENT OF FACTS

14.     At all material times hereto, Plaintiff was a Lieutenant employed by the Cumberland County Sheriff's Department with a long-term law enforcement and corrections career.

15.     Plaintiff is the son of Scott M. Jordan, Sr. (hereinafter "Jordan Sr.") who is now deceased.

16.     As of May 2014, Plaintiff's father Jordan Sr. was living independently in his own home in Waldoboro, Maine but was suffering from multiple ongoing medical issues.

17.     As Jordan, Sr. had been declining medically as well as having some financial issues, Plaintiff and his father had agreed to a plan that Plaintiff was going to rent a house in Standish,

for his minor daughter, Jordan, Sr. and himself to reside in together and that Plaintiff would make repairs to Jordan, Sr.'s home so it could be rented and/or sold as well as, sell the inventory of Jordan Sr.'s shop located in Jordan Sr.'s home in preparation of his father moving in with he and his daughter.

18.     Plaintiff and Jordan had also discussed Jordan Sr. giving Plaintiff a financial power of attorney to allow Plaintiff to assist him including by paying his bills.

19.     In May 2014, Jordan Sr. discussed giving his son a power of attorney with his sister, Raeberta Myers and she had asked him a number of times if he was sure this is what he wanted and each time he assured her "this is what he wanted to do". Jordan, Sr. explained that Plaintiff was being "upstanding" about things and given his health issues he needed Plaintiff to be able to pay his bills.

20.     On or about May 12,  2014, Jordan, Sr. was hospitalized after a welfare  check requested by Plaintiff. He was found in his home in state of confusion with stool everywhere. He was transported to Pen Bay Medical Center for treatment and was admitted.

21.     Due to rising concerns as to Jordan, Sr.'s declining health upon his hospitalization and to allow Plaintiff to take care of Jordan, Sr. both medically and financially as planned, including by repairing Jordan, Sr.'s house in preparation of  Jordan, Sr. moving in with Plaintiff, Jordan Sr. freely and voluntarily executed an Appointment of Agent Financial Power Attorney on May 15, 2014 which was notarized and executed in the presence of an independent witness who worked at Pen Bay Medical Center. See, Copy of Appointment of Agent Financial Power of Attorney dated May 15, 2014 (hereinafter "power of attorney") attached hereto as **Exhibit A**.

22.      Jordan, Sr. granted Plaintiff power of attorney the same month he advised his sister repeatedly that is what he wanted to do.

23.    Unfortunately, thereafter Jordan, Sr. continued to decline medically and  was in and out of the hospital though July 2014.

24.    Notwithstanding, Plaintiff continued to work toward the plan to fix up his father's  home and have Jordan, Sr. move in with him and his daughter traveling regularly from Standish to Waldoboro to assist his father and work on the house.

25.    Plaintiff was also paying Jordan, Sr. bills  for him and had coordinated the successful sale of the shop inventory as planned.

26.    As Plaintiff was spending significant time and money traveling back and forth from Standish to Waldoboro to assist his father and to repair his father's home to prepare it to be rented and/or sold, in June 2014, pursuant to the power of attorney Plaintiff properly transferred his father's 2003 Chevrolet trunk into his name and re-registered it as it got better fuel mileage then his truck and he was using it for the benefit of his father. Plaintiff however,  left his own truck for his father to use.

27.    During this time period, Jordan became concerned his father was suicidal and properly removed some firearms from the home.

28.    Pursuant to the Power of Attorney, Plaintiff had full power and authority to deal with all of his father's property, including the authority to convey, sell and/or encumber or dispose of any property, as well as the specific power to gift to or for the benefit of himself.

29.    By the end of July Jordan, Sr. had been in and out of the hospital for months and was upset with the situation and argued with Plaintiff despite Plaintiff's continued efforts to assist him in good faith and move forward with their plan to get the house ready and his father to live with he and his daughter.

30.     On July 27, 2014, Jordan, Sr. after threatening Plaintiff that he was going to drive to and

see Plaintiff's employer at the Cumberland County Sheriff's Office to make a complaint about

him, called WPD claiming he was assaulted by Plaintiff.

31.     Defendant Santheson responded to the call, and Jordan Sr. admitted that it was he who

put his left arm around Plaintiff to stop him from leaving, which was verified by Plaintiff who

explained to Defendant Santheson that his father had been having health issues in recent months,

that his health was declining and that he does not "want to realize and comes to terms with what

is happening." Jordan, Sr. despite calling the police refused to write a statement.

32.     At that time, Defendant Santheson was also advised by both Plaintiff and Jordan, Sr. that

Plaintiff was his father's power of attorney, and advised that Plaintiff had re-registered his

father's truck into his name as he was using it due to traveling on a regular basis and it getting

better fuel mileage.

33.     Plaintiff planned on bringing his father the 2003 Chevrolet truck the next week when he

could return to Waldoboro and at which time he would also pick up his truck and his personal

property/tools that had been brought to his father's house.

34.     Jordan Sr. then claimed Plaintiff's personal property was stolen and refused to tell

Plaintiff where his property was.

35.     In a writing dated July 31, 2014, Jordan, Sr. then revoked the Power of Attorney that he

had granted Plaintiff.

36.     On or about October 17, 2014, Jordan, Sr. while still refusing to give Plaintiff his

personal property back, reported to the WPD that Plaintiff had previously been his Power of

Attorney and was refusing to return the Chevrolet truck transferred to Plaintiff as well as, Jordan,

Sr.'s firearms. Defendant Jeffery Fuller took this report and noted that Jordan, Sr. repeatedly advised he just wanted his truck back and his guns returned.

37.     Defendant Fuller requested Jordan, Sr. provide a copy of the paperwork he and his son had signed giving his son rights to his finances and to make decisions for him and Jordan Sr. provided the power of attorney paperwork to Defendants the next day.

38.     Defendant Fuller contacted Plaintiff regarding his father's report and Plaintiff advised Defendant Fuller that he had the Chevrolet truck but had left his truck for his father, and that the Chevrolet truck used less fuel and made it easier for him to come and help his farther when he was needed. He also explained that he and his father had made an agreement that Jordan Sr.'s house would be fixed up and rented or sold and that he had spent a large amount of time and money fixing it up for his father.

39.     Plaintiff also advised Defendant Fuller at this time that he did not believe it was safe to return his father's firearms due to his father's mental instability and offered to give the firearms to the police; and further advised that Jordan, Sr. had taken Plaintiff's personal property claiming it was stolen.

40.     On October 21, 2014, Defendant Fuller and Defendant Hesseltine, Jr. discussed the Jordan, Sr. matter and Defendant Hesseltine, Jr. agreed to follow up as Defendant Fuller was going to be out of the office for several weeks.

41.     Per Defendant Hesseltine, Jr.'s Waldoboro Police Department report in this matter, as of November 20, 2014, Defendant Hesseltine, Jr. had only interviewed one witness in the matter, Jordan, Sr., before seeking a search warrant for Plaintiff's residence for items some of which Plaintiff had already advised WPD he had including the 2003 Chevrolet truck.

42.     On November 20, 2014, Defendant Hesseltine, Jr. then authored and filed in the Maine District Court sitting in Wiscasset, an Affidavit and Request for Search Warrant for the residence of Scott Jordan, Jr., located at 661 White Bridge Rd., #15, Tax Map/Lot: 058/013/015, Town of Standish, County of Cumberland, State of Maine and any and all vehicles, boats and/or outbuildings on the premises citing property to be searched or seized as the Chevrolet truck including Title Certificate, three firearms, a 2-Cycle Mantis Tiller as well as, other items and financial documentation to include bank records and receipts showing the disposition of Scott Jordan Sr.'s property. See, Copy of Search Warrant and Affidavit and Request for Search Warrant attached hereto as **Exhibit B.**

43.     Defendant Hesseltine, Jr. asserted in his Affidavit and Request for Search Warrant that the described property "constitutes evidence of the commission of the criminal offense . . .The offense being, Theft By Unauthorized Taking or Transfer, Title 17-A M.R.S.A. Sec. 353.1.A.2 Class B.

44.     The Search Warrant was granted that same day with the Court finding probable cause to search the residence of Plaintiff.

45.     However, unknown to the Court, the Affidavit and Request for Search Warrant (hereinafter "Affidavit") authored by Defendant Hesseltine, Jr. included misleading statements made wantonly, or with intentional or reckless disregard for truth or falsity, and/ or which intentionally or recklessly included materially false information, and/ or with intentional or reckless disregard for the truth in omission of material facts. Any conceivable probable cause for issuance of a search warrant for Plaintiff's residence is vitiated if the materially false information is excluded and/or the omitted material facts included.

46.     Furthermore, Defendants' basis for probable cause asserted in the November 20, 2014 Affidavit relied extensively if not exclusively, on the unverified statements of the alleged victim, Plaintiff's medically fragile father, Jordan, Sr.

47.     Defendant Hesseltine, Jr. omitted certain material information in the Affidavit obtained during the police interviews with Jordan, Sr. as well as, other material information that was known or should have been known to Defendants that evidenced Jordan, Sr.'s lack of credibility including but not limited to: the material facts that the alleged victim had been repeatedly hospitalized and was known by the WPD to at times act in a confused and abnormal manner; that the alleged victim, Jordan, Sr. had taken Plaintiff's personal property claiming it was stolen and refused to return it; that Jordan, Sr. had threatened Plaintiff; and that the WPD had investigated an incident involving Jordan, Sr. and Plaintiff in July 2014, in which the alleged victim claimed Plaintiff assaulted him but it was he who assaulted Plaintiff. This material information was wantonly, or intentionally or in reckless disregard for truth or falsity omitted from the Affidavit.

48.     Defendant Hesseltine, Jr. also omitted the material fact that the Power of Attorney, granted Plaintiff full power and authority to deal with all of his father's property, including the authority to convey, sell , encumber and/or dispose of any property, as well as the specific power to gift to or for the benefit of himself; and furthermore, that pursuant to the Power of Attorney, the alleged victim, Jordan, Sr. had avowed the following as to the actions of his agent: "And I, . . . hereby RATIFY AND CONFIRM and promise at all times to ratify and confirm all and whatsoever my agent, shall lawfully do or cause to be done in and about the premises by virtue of these presents, including anything which shall be done between the revocation of these presents . . .". This material information was also wantonly, or intentionally or in reckless disregard for truth or falsity omitted from the Affidavit.

49.     Defendant Hesseltine, Jr. also omitted the material facts including but not limited to that Plaintiff's August 12, 2014 letter responding to Jordan, Sr.'s lawyer Pease's letter addressed the inability to return guns because his father was suicidal and living with a person who had a temporary PFA against him and who could not have firearms; explained that Jordan, Sr. had threatened Plaintiff; that Jordan, Sr. was sending threatening e-mails to Plaintiff; that Jordan, Sr. attacked Plaintiff on July 27, 2014 and then attempted to have him arrested; that transferring the truck into Plaintiff's name was mutually agreed to my he and his father; and that Plaintiff used significant funds of his own and used his benefit time at work to help his father and work toward their plan. This material information was also wantonly, or intentionally or in reckless disregard for truth or falsity omitted from the Affidavit.

50.     The Affidavits also included statements made wantonly, or with intentional or reckless disregard for truth or falsity, and/ or which intentionally or recklessly included materially false information, including but not limited to the statements that "Scott Jordan, Jr. sent a letter to Attorney Pease dated August 12th, 2014 refusing to supply financial details"; and "[a]cting as the Agent, Scott Jordan Jr. is not entitled to use Scott Jordan Sr. property to his own benefit."

51.     Pursuant to the search warrant, on November 21, 2016, Defendants then converged on Plaintiff's property to execute the unlawful search warrant as Plaintiff was leaving for work and bringing  his minor daughter to school.

52.     Defendants Hesseltine, Jr. and Santheson as well as, numerous State Police Officers shut down Plaintiff's street and surrounded his property while armed and with threat of physical force or violence.

53.     Defendant Hesseltine, Jr. without an arrest warrant immediately arrested Plaintiff upon Plaintiff answering his front door placing him in handcuffs while multiple armed police officers where present and his minor child.

54.     Plaintiff remained handcuffed  while his home was searched.

55.     Defendants and/or their agents, employees and/or servants caused the unlawful arrest of Plaintiff on or about November 21, 2014, for felony theft by unauthorized taking or transfer Class B without a warrant and without probable cause.

56.     Plaintiff was not free to go at anytime and was removed by physical force or violence or threat of physical force or violence from his home and his minor child by Defendants WPD.

57.     Plaintiff was  then was transported by police to Two Rivers Jail after the search of his home was completed where he was booked and incarcerated on the charge of felony theft.

58.     Plaintiff was released thereafter on unsecured bail of $5,000 with conditions of release restricting his liberty including by requiring Plaintiff not to return to his father's home except to pick up personal vehicle  and not to have direct or indirect contact with his own father.

59.     Plaintiff's liberty remained  restricted by these conditions of release for at or near ten (ten) months while he was unlawfully prosecuted for felony theft in the matter of *State v. Scott Jordan Jr.*, Lincoln County Superior Court Docket No.: CR-14-406.

60.     After his unlawful arrest, Plaintiff was thereafter Indicted without probable cause on March 10, 2015 for four counts of Theft by Unauthorized Taking Class B as well as, one count of Theft by Misapplication of Property, Class B. Copy of Indictment attached hereto as **Exhibit C.**

61.     The Indictment occurred when Defendants had withheld material and favorable evidence as to Plaintiff including but not limited to:  that Plaintiff's aunt and Jordan, Sr.'s sister Raeberta

Myers, was contacted by Defendant Chief of Police Labombarde and a patrolman "Larry" in Fall of 2014 regarding her brother granting Plaintiff power of attorney, and Myers was very clear to WPD that Plaintiff did not pressure Jordan, Sr. into signing the Power of Attorney while he was not in his right mind as police claimed, and that any such assertion was "definitely not true". She also explained to WPD at that time that she had a conversation regarding this very issue with her brother in May 2014 and had asked him a number of times if he was sure this was what he wanted and each time Jordan, Sr. assured her "this is what he wanted to do". Myers told Labombarde and patrolman "Larry" that it was her feeling that her brother knew exactly what he wanted and what he was doing at that time.

62.     Defendants also withheld evidence that Defendant Hesseltine, Jr. had contacted another witness and questioned her about Plaintiff's alleged drug use. During this interview, the witness denied any drug use occurred and Hesseltine, Jr. stated to her "he would make sure Jr. never worked in law enforcement again" evidencing his malicious motives against Plaintiff.

63.     Furthermore, when Jordan, Sr. threatened a witness in favor of Plaintiff with calling the Department of Health and Human Services on him if he got involved in the case involving Plaintiff's stolen property the WPD did nothing despite evidence of witness tampering.

64.     Jordan, Jr. passed away on September 1, 2015. Plaintiff was not even able to say goodbye to his father due to the conditions of release imposed pursuant to the unlawful search, arrest and prosecution and continued prosecution of Plaintiff.

65.     On or about September 14, 2015, the criminal proceedings were dismissed against Plaintiff as the "The victim and key witness in the case for the State, Scott Jordan Sr., has died". See, copy of Dismissal attached hereto as **Exhibit D**.

66.     The State could not bring its case against Plaintiff with or without Jordan, Sr. as there was no probable cause to do so with or without Jordan, Sr.

67.     Defendant WPD and its agents, employees and/or servants including the Police Officer Defendants, knew and/or should of known there was not probable cause to search Plaintiff's home, to arrest, incarcerate and cause to be instituted criminal proceedings against Plaintiff and/or to continue the same and conspired to do so and/or conspired not to conduct any or any reasonable investigation into the crimes and/or the exculpatory evidence available and maliciously withheld material and favorable evidence from reaching the Defendant, the grand jury, and/or the District Attorney and/or otherwise conspired causing the unlawful arrest, incarceration and institution of criminal proceedings against Plaintiffs and/or the continuation of the same.

68.     Due to the wrongful actions of Defendants of searching Plaintiff's home, arresting, incarcerating and causing the  criminal prosecution of Plaintiff for very serious felony crimes against his own father while Plaintiff was a Lieutenant with the  Cumberland County Sheriff's Office, Plaintiff's name and photograph was widely published as to said crimes in the media including but not limited to in newspapers, on the internet and/or on the television.

69.     Municipal Defendants' agents, employees and/or servants including Defendant Hesseltine, Jr. and Chief Labombarde, made false and defamatory statements concerning Plaintiff to the public and/or third parties to the effect that Plaintiff committed the serious criminal conduct of felony theft including as to firearms against his own father and/or that there was probable cause to believe the Plaintiff committed this serious criminal conduct, and/or that Plaintiff committed elder abuse against his father and/or Municipal Defendants agents, employees and/or servants including Chief Labombarde made defamatory statements that

14

implied the existence of defamatory facts falsely implicating Plaintiff in the serious criminal

conduct. The statements included but are not limited to:

Defendant Labombarde called the case against Plaintiff a "case of elder abuse"
Defendant Labombarde described the case against Jordan Jr. as "a classic scenario of elder abuse."
Defendant Hesseltine, Jr. stated "There is no statute for elder abuse, it falls under theft," "financial exploitation of the elderly."
Defendant Labombarde said, "In my opinion, it was a case of elder abuse"

70.     As a result of the unlawful actions of Defendants, Plaintiff's reputation has been severely

damaged.

71.     As a result of the unlawful search, arrest, incarceration, and institution and continued

institution of criminal proceedings against Plaintiff, he was suspended from his employment.

lost his health insurance for a period of time and was subjected multiple investigations.

72.     Due to the wrongful actions of Defendants, Plaintiff suffered and continues to suffer

severe mental and emotional injuries and distress that required and/or requires medical treatment.

### COUNT I. VIOLATION OF 5 M.R.S.A. § 4682 Unlawful Search and Seizure
### (Police Officer Defendants)

73.   By reference, Plaintiff incorporates each and every allegation and averment

contained in Paragraphs 1 through 72 as though fully set forth herein.

74.   Police Officer Defendants intentionally interfered or attempted to intentionally interfere by

use of physical force or violence and/or threats thereof, with Plaintiffs' rights secured by the

United States Constitution and/or the laws of the United States and/or the rights secured by the

laws and Constitution of the State of Maine, by unlawfully trespassing on Plaintiff's property

and unlawfully searching and seizing his home and property on November 21, 2014, without

probable cause.

75. Police Officer Defendants obtained a search warrant for Plaintiffs' home, pursuant to an Affidavit and Request for Search Warrant, which included misleading statements made wantonly, or with intentional or reckless disregard for truth or falsity, and/ or which intentionally or recklessly included materially false information, and/ or with intentional or reckless disregard for the truth in omission of material facts.  Any conceivable probable cause for the search and seizure of Plaintiff's home and property is vitiated if the materially false information is excluded and/or the omitted material facts included making the warrant invalid, unlawful and/or defective.

76. Police Officer Defendants did not have any reasonable or probable cause to believe that Plaintiff committed an offense and/or that evidence of a crime was at Plaintiff's home or that he had property at his home constituting evidence of the commission of a criminal offense and/or property designed or intended for the use or which had been used as the means of committing a criminal offense and/or property that was contraband.

77.  As a proximate and direct result of Police Officer Defendants wrongful acts in knowing violation of the law and/or when no reasonable competent officer would have concluded that the action was lawful, and/or Defendant Chief Labombarde's actions and inaction amounting to gross negligence, reckless and/or callous and/or deliberate indifference and/or wrongful supervisory encouragement, condonation or acquiescence in constitutional rights-violating conduct, Plaintiff was subjected to unlawful search and seizure.

78. Police Officer Defendants, at all times material herein, acted under color of the law.

79. Police Officer Defendants' actions constituted an unlawful search and seizure of Plaintiff's home and property, in violation of clearly established rights guaranteed to the Plaintiff by Article 1, Sections 1, 5, 6, and 6-A of the Maine Constitution and by the Fourth and Fourteenth Amendments to the United States Constitution.

80. Police Officer Defendants individually and/or jointly deprived and/or continued to deprive Plaintiff, either directly or indirectly, of his clearly established rights guaranteed to the Plaintiff by Article 1, Sections 1, 5, 6, and 6-A of the Maine Constitution and by the Fourth and Fourteenth Amendments to the United States Constitution and/or conspired for the purpose of doing so.

81. As a proximate and direct result of the unlawful search and seizure of Plaintiff's home and property in violation of Plaintiff's Constitutional rights as foresaid, Plaintiff has suffered and continues to suffer grievous and long lasting injuries.

82. Plaintiff has suffered and continues to suffer physical, emotional, and mental injuries and damages, medical expenses, pain and suffering, economic losses, lost wages and/or earnings opportunities, loss of enjoyment of life, and seeks compensatory damages, punitive damages, attorney fees and costs and all other relief available under the law.

### COUNT II. VIOLATION OF 5 M.R.S.A. § 4682 Unlawful Search and Seizure
### (Municipal Defendants and Defendant Labombarde)

83.     By reference, Plaintiff incorporates each and every allegation and averment contained in Paragraphs 1 through 82 as though fully set forth herein.

84.     Defendants Town of Waldoboro through the Defendant WPD are the employer of Police Officers Defendants and Municipal Defendants and/or Defendant Chief Labombarde set the policies and procedures for the training, supervising and/or disciplining of Waldoboro police officers.

85.     Police Officer Defendants were inadequately trained, supervised, and/ or disciplined as to conducting police investigations,  as to searches and seizures, in making probable cause determinations, and/ or in drafting and obtaining search warrants by Municipal Defendants and/or Defendant Chief Labombarde amounting to gross negligence and/or callous and/or

deliberate indifference as to Plaintiff's constitutional rights and/or wrongful supervisory encouragement, condonation or acquiescence in constitutional rights-violating conduct.

86.     Police Officer Defendants' inadequate training, supervision, and/ or discipline as to conducting police investigations, as to searches and seizures, in making probable cause determinations, and/ or in drafting and obtaining search warrants directly and foreseeably resulted in the unlawful search and seizure of Plaintiff's home and property in violation of clearly established rights guaranteed to the Plaintiffs by Article 1, Sections 1, 5, 6, and 6-A of the Maine Constitution and by the Fourth and Fourteenth Amendments to the United States Constitution.

87. As a proximate and direct result of violation of Plaintiff's Constitutional rights, as foresaid, Plaintiff has suffered and continues to suffer grievous and long lasting injuries.

88. Plaintiff has suffered and continues to suffer physical, emotional, and mental injuries and damages, medical expenses, pain and suffering, economic losses, lost wages and/or earnings opportunities, loss of enjoyment of life, and seeks compensatory damages, punitive damages, attorney fees and costs and all other relief available under the law.

### COUNT III. VIOLATION OF 5 M.R.S.A. § 4682 Unlawful Search and Seizure (Municipal Defendants)

89.     By reference, Plaintiffs incorporate each and every allegation and averment contained in Paragraphs 1 through 88 as though fully set forth herein.

90.     Defendants Town of Waldoboro and/or WPD are the final policy makers for WPD in the substantive area of conducting police investigations, as to searches and seizures, in making probable cause determinations, and/ or in drafting and obtaining search warrants.

91.     The policies, pattern of conduct, customs, practices and/ or procedures of the WPD, i.e. as to conducting police investigations, as to searches and seizures, in making probable cause

determinations, and/ or in drafting and obtaining search warrants, were unconstitutional and/or grossly negligent amounting to callous and/or deliberate indifference to Plaintiff's constitutional rights directly resulting in the unlawful search and seizure of Plaintiff's home and property in violation of clearly established rights guaranteed to Plaintiffs by Article 1, Sections 1, 5, 6 and 6-A of the Maine Constitution and by the Fourth and Fourteenth Amendments to the United States Constitution.

92.     As a proximate and direct result of violation of Plaintiff's Constitutional rights, as foresaid, Plaintiff has suffered and continues to suffer grievous and long lasting injuries.

93.     Plaintiff has suffered and continues to suffer physical, emotional, and mental injuries and damages, medical expenses, pain and suffering, economic losses, lost wages and/or earnings opportunities, loss of enjoyment of life, and seeks compensatory damages, punitive damages, attorney fees and costs and all other relief available under the law.

### COUNT IV. VIOLATION OF 42 U.S.C. § 1983 Unlawful Search and Seizure
### (Police Officers Defendants)

94.     By reference, Plaintiff incorporates each and every allegation and averment contained in Paragraphs 1 through 93 as though fully set forth herein.

95.     Police Officer Defendants unlawfully searched and seized Plaintiff's home and property and/or caused the unlawful search and seizure of Plaintiff's home and property on November 21, 2014,  without probable cause.

96.     Police Officer Defendants obtained a search warrant for Plaintiff's home, pursuant to an Affidavit and Request for Search Warrant, which included misleading statements made wantonly, or with intentional or reckless disregard for truth or falsity, and/ or which intentionally or recklessly included materially false information, and/ or with intentional or reckless disregard for the truth in omission of material facts.  Any conceivable probable cause for the search and

seizure of Plaintiff's home and property is vitiated if the materially false information is excluded and/or the omitted material facts included making the warrant invalid, unlawful and/or defective.

97.     Police Officer Defendants did not have any reasonable or probable cause to believe that Plaintiff committed a crime and/or that evidence of a crime was at Plaintiff's home or that he had property at his home constituting evidence of commission of a criminal offense and/or property designed or intended for the use or which had been used as the means of committing a criminal offense and/or property that was contraband.

98.     As a proximate and direct result of Police Officer Defendants' wrongful acts in knowing violation of the law and/or when no reasonable competent officer would have concluded that the action was lawful, and/or Defendant Chief Labombarde's actions and inaction amounting to gross negligence, reckless and/or callous and/or deliberate indifference and/or wrongful supervisory encouragement, condonation or acquiescence in constitutional rights-violating conduct, Plaintiff was subjected to unlawful search and seizure.

99.     Police Officer Defendants, at all times material hereto, acted under color of the law.

100.    Police Officer Defendants' actions constituted an unlawful search and seizure of Plaintiff's home and property, in violation of clearly established rights guaranteed to the Plaintiff by Article 1, Sections 1, 5, 6, and 6-A of the Maine Constitution and by the Fourth and Fourteenth Amendments to the United States Constitution.

101.    Police Officer Defendants individually and/or jointly deprived and/or continued to deprive Plaintiff, either directly or indirectly, of his clearly established rights guaranteed to the Plaintiff by Article 1, Sections 1, 5, 6, and 6-A of the Maine Constitution and by the Fourth and Fourteenth Amendments to the United States Constitution and/or conspired for the purpose of doing so.

102.    As a proximate and direct result of the unlawful search and seizure of Plaintiff's home and property in violation of Plaintiff's Constitutional rights Plaintiff has suffered and continues to suffer grievous and long lasting injuries.

103.    Plaintiff has suffered and continues to suffer physical, emotional, and mental injuries and damages, medical expenses, pain and suffering, economic losses, lost wages and/or earnings opportunities, loss of enjoyment of life, and seeks compensatory damages, punitive damages, attorney fees and costs and all other relief available under the law.

### COUNT V. VIOLATION OF 42 U.S.C. § 1983 Unlawful Search and Seizure
### (Municipal Defendants and Defendant Chief Labombarde)

104.    By reference, Plaintiff incorporates each and every allegation and averment contained in Paragraphs 1 through 103 as though fully set forth herein.

105.    Defendants Town of Waldoboro through Defendant WPD are the employer of Police Officers Defendants and Municipal Defendants and/or Defendant Chief Labombarde  set the policies and procedures for the training, supervising and/or disciplining of Waldoboro police officers.

106.    Police Officer Defendants were inadequately trained, supervised, and/ or disciplined as to conducting police investigations, as to searches and seizure, in making probable cause determinations, and/ or in drafting and obtaining search warrants by Municipal Defendants and/or Chief Labombarde amounting to gross negligence and/or callous and/or deliberate indifference as to Plaintiff's constitutional rights and/or wrongful supervisory encouragement, condonation or acquiescence in constitutional rights-violating conduct.

107.    Police Officer Defendants' inadequate training, supervision, and/ or discipline as to conducting police investigations, as to searches and seizure, in making probable cause determinations, and/ or in drafting and obtaining search warrants directly and foreseeably

resulted in the unlawful search and seizure of Plaintiff's home and property in violation of clearly established rights guaranteed to the Plaintiff by Article 1, Sections 1, 5, 6, and 6-A of the Maine Constitution and by the Fourth and Fourteenth Amendments to the United States Constitution.

108.     As a proximate and direct result of violation of Plaintiff's Constitutional rights, as foresaid, Plaintiff has suffered and continues to suffer grievous and long lasting injuries.

109.     Plaintiff has suffered and continues to suffer physical, emotional, and mental injuries and damages, medical expenses, pain and suffering, economic losses, lost wages and/or earnings opportunities, loss of enjoyment of life, and seeks compensatory damages, punitive damages, attorney fees and costs and all other relief available under the law.

### COUNT VI. VIOLATION OF 42 U.S.C. § 1983 Unlawful Search and Seizure (Municipal Defendants)

110.     By reference, Plaintiff incorporates each and every allegation and averment contained in Paragraphs 1 through 109 as though fully set forth herein.

111.     Defendants Town of Waldoboro and/or WPD are the final policy makers for WPD in the substantive area of conducting police investigations, as to searches and seizure,  in making probable cause determinations, and/ or in drafting and obtaining search warrants.

112.     The policies, pattern of conduct, customs, practices and/ or procedures of the WPD, i.e. as to conducting police investigations, as to searches and seizures, in making probable cause determinations, and/ or in drafting and obtaining search warrants were unconstitutional and/or grossly negligent amounting to deliberate indifference to Plaintiff's constitutional rights directly resulting in the unlawful search and seizure of Plaintiff's home and property  in violation of clearly established rights guaranteed to Plaintiff by Article 1, Sections 1, 5, 6, and 6-A of the

Maine Constitution and by the Fourth and Fourteenth Amendments to the United States Constitution.

113.    As a proximate and direct result of violation of Plaintiff's Constitutional rights, as foresaid, Plaintiff has suffered and continues to suffer grievous and long lasting injuries.

114.    Plaintiff has suffered and continues to suffer physical, emotional, and mental injuries and damages, medical expenses, pain and suffering, economic losses, lost wages and/or earnings opportunities, loss of enjoyment of life, and seeks compensatory damages, punitive damages, attorney fees and costs and all other relief available under the law.

### COUNT VII. VIOLATION OF 5 M.R.S.A. § 4682 False Arrest
### (Police Officer Defendants)

115.    By reference, Plaintiff incorporates each and every allegation and averment contained in Paragraphs 1 through 114 as though fully set forth herein.

116.    Police Officer Defendants intentionally interfered or attempted to intentionally interfere by use of physical force or violence and/or threats thereof, with Plaintiff's rights secured by the United States Constitution and/or the laws of the United States and/or the rights secured by the laws and Constitution of the State of Maine, by unlawfully arresting and/or unlawfully causing the arrest of Plaintiff on November 21, 2014, without probable cause and without a warrant. Plaintiff was at no time free to leave and he was restrained and/or confined against his will.

117. Police Officer Defendants did not have any reasonable or probable cause for believing that Plaintiff had committed the crime and/or crimes of felony theft.

118. The Indictment thereafter being obtained through the Defendants withholding material and/or favorable exculpatory and/or impeachment evidence, and/or by failing to make a complete and full statement of facts either to Defendant, the Grand Jury and/or to the District Attorney, and/or by misrepresenting/falsifying and/or hiding evidence and/or otherwise acting in

bad faith, vitiating and/or stripping from the Indictment any conceivable probable cause making the Indictment invalid, unlawful and/or defective.

119.  As a proximate and direct result of Police Officer Defendants wrongful acts in knowing violation of the law and/or when no reasonable competent officer would have concluded that the action was lawful, and/or Defendant Chief Labombarde's actions and inaction amounting to gross negligence, reckless and/or callous and/or deliberate indifference and/or wrongful supervisory encouragement, condonation or acquiescence in constitutional rights-violating conduct, Plaintiff was subjected to unlawful arrest, search and seizure and unlawful confinement through Plaintiff's arrest and incarceration.

120. Police Officer Defendants, at all times material herein, acted under color of the law.

121. Police Officer Defendants' actions constituted a false arrest and unlawful search and seizure of Plaintiff, in violation of clearly established rights guaranteed to the Plaintiffs by Article 1, Sections 1, 5, 6, and 6-A of the Maine Constitution and by the Fourth and Fourteenth Amendments to the United States Constitution.

122. Police Officer Defendants individually and/or jointly deprived and/or continued to deprive Plaintiff either directly or indirectly, of his clearly established rights guaranteed to the Plaintiff by Article 1, Sections 1, 5, 6, and 6-A of the Maine Constitution and by the Fourth and Fourteenth Amendments to the United States Constitution and/or conspired for the purpose of doing so.

123. As a proximate and direct result of Plaintiff's false arrest in violation of Plaintiff's Constitutional rights as foresaid, Plaintiff has suffered and continues to suffer grievous and long lasting injuries.

124. Plaintiff has suffered and continues to suffer physical, emotional, and mental injuries and damages, medical expenses, pain and suffering, economic losses, lost wages and/or earnings opportunities, loss of enjoyment of life, and seeks compensatory damages, punitive damages, attorney fees and costs and all other relief available under the law.

### COUNT VIII. VIOLATION OF 5 M.R.S.A. § 4682 False Arrest
### (Municipal Defendants and Defendant Labombarde)

125.   By reference, Plaintiff incorporate each and every allegation and averment contained in Paragraphs 1 through 124 as though fully set forth herein.

126.   Defendants Town of Waldoboro through the Defendant WPD are the employer of Police Officers Defendants and Municipal Defendants and/or Defendant Chief Labombarde set the policies and procedures for the training, supervising and/or disciplining of Waldoboro police officers.

127. Police Officer Defendants were inadequately trained, supervised, and/ or disciplined as to conducting police investigations, evidence and discovery production/obligations, making arrests, and/or in making probable cause determinations by Municipal Defendants and/or Defendant Chief Labombarde amounting to gross negligence and/or callous and/or deliberate indifference as to Plaintiff's constitutional rights and/or wrongful supervisory encouragement, condonation or acquiescence in constitutional rights-violating conduct.

128.   Police Officer Defendants' inadequate training, supervision, and/ or discipline as to conducting police investigations, evidence and discovery production/obligations, making arrests, and/or in making probable cause determinations directly and foreseeably  resulted in the false arrest and unlawful search and seizure of Plaintiff in violation of clearly established rights guaranteed to the Plaintiff by Article 1, Sections 1, 5, 6, and 6-A of the Maine Constitution and by the Fourth and Fourteenth Amendments to the United States Constitution.

129.   As a proximate and direct result of violation of Plaintiff's Constitutional rights, as foresaid, Plaintiff has suffered and continues to suffer grievous and long lasting injuries.

130.   Plaintiff has suffered and continues to suffer physical, emotional, and mental injuries and damages, medical expenses, pain and suffering, economic losses, lost wages and/or earnings opportunities, loss of enjoyment of life, and seeks compensatory damages, punitive damages, attorney fees and costs and all other relief available under the law.

### COUNT IX. VIOLATION OF 5 M.R.S.A. § 4682 False Arrest
### (Municipal Defendants)

131.   By reference, Plaintiff incorporates each and every allegation and averment contained in Paragraphs 1 through 130 as though fully set forth herein.

132.   Defendants Town of Waldoboro and/or WPD are the final policy makers for WPD in the substantive area of conducting police investigations, evidence and discovery production/obligations,  making arrests, and/or in making probable cause determinations.

133.   The policies, pattern of conduct, customs, practices and/ or procedures of the WPD, i.e. as to conducting police investigations, evidence and discovery production/obligations,  making arrests, and/or in making probable cause determinations were unconstitutional and/or grossly negligent amounting to callous and/or deliberate indifference to Plaintiff's constitutional rights directly resulting in the false arrest and unlawful search and seizure of Plaintiff in violation of clearly established rights guaranteed to Plaintiff by Article 1, Sections 1, 5, 6, and 6-A of the Maine Constitution and by the Fourth and Fourteenth Amendments to the United States Constitution.

134.   As a proximate and direct result of violation of Plaintiff's Constitutional rights, as foresaid, Plaintiff has suffered and continues to suffer grievous and long lasting injuries.

135.    Plaintiff has suffered and continues to suffer physical, emotional, and mental injuries and damages, medical expenses, pain and suffering, economic losses, lost wages and/or earnings opportunities, loss of enjoyment of life, and seek compensatory damages, punitive damages, attorney fees and costs and all other relief available under the law.

### COUNT X. VIOLATION OF 42 U.S.C. § 1983 False Arrest
### (Police Officers Defendants)

136.    By reference, Plaintiff incorporates each and every allegation and averment contained in Paragraphs 1 through 135 as though fully set forth herein.

137.    Police Officer Defendants unlawfully arrested and/or caused the unlawful arrest of Plaintiff on November 21, 2014,  without probable cause and without a warrant and at no time was Plaintiff free  to leave and he was restrained and/or confined against his will.

138.    Defendants did not have any reasonable or probable cause for believing that Plaintiff had committed the crime and/or crimes of felony theft.

139.    The Indictment thereafter being obtained through  the Defendants withholding material and/or favorable exculpatory and/or impeachment evidence, and/or  by failing to make a complete and full statement of facts either to Defendant, the Grand Jury and/or to the District Attorney, and/or by misrepresenting/falsifying and/or hiding evidence and/or otherwise acting in bad faith, vitiating and/or stripping from the Indictment any conceivable probable cause making the Indictment invalid, unlawful and/or defective.

140.    As a proximate and direct result of Police Officer Defendants' wrongful acts in knowing violation of the law and/or when no reasonable competent officer would have concluded that the action was lawful, and/or Defendant Chief Labombarde's actions and inaction amounting to gross negligence, reckless and/or callous and/or deliberate indifference and/or wrongful supervisory encouragement, condonation or acquiescence in constitutional rights-violating

conduct, Plaintiff was subjected to unlawful arrest, search and seizure and unlawful confinement through Plaintiff's arrest and incarceration.

141. Police Officer Defendants, at all times material hereto, acted under color of the law.

142. Police Officer Defendants' actions constituted a false arrest and unlawful search and seizure of Plaintiff in violation of clearly established rights guaranteed to the Plaintiff by Article 1, Sections 1, 5, 6, and 6-A of the Maine Constitution and by the Fourth and Fourteenth Amendments to the United States Constitution.

143. Police Officer Defendants individually and/or jointly deprived and/or continued to deprive Plaintiff, either directly or indirectly, of his clearly established rights guaranteed to the Plaintiff by Article 1, Sections 1, 5, 6, and 6-A of the Maine Constitution and by the Fourth and Fourteenth Amendments to the United States Constitution and/or conspired for the purpose of doing so.

144. As a proximate and direct result of Plaintiff's false arrest in violation of Plaintiff's Constitutional rights Plaintiff has suffered and continues to suffer grievous and long lasting injuries.

145. Plaintiff has suffered and continues to suffer physical, emotional, and mental injuries and damages, medical expenses, pain and suffering, economic losses, lost wages and/or earnings opportunities, loss of enjoyment of life, and seeks compensatory damages, punitive damages, attorney fees and costs and all other relief available under the law.

## COUNT XI. VIOLATION OF 42 U.S.C. § 1983 False Arrest
### (Municipal Defendants and Defendant Chief Labombarde)

146. By reference, Plaintiff incorporates each and every allegation and averment contained in Paragraphs 1 through 145 as though fully set forth herein.

147.    Defendants Town of Waldoboro through Defendant WPD are the employer of Police Officers Defendants and Municipal Defendants and/or Defendant Chief Labombarde  set the policies and procedures for the training, supervising and/or disciplining of Waldoboro police officers.

148.    Police Officer Defendants were inadequately trained, supervised, and/ or disciplined as to conducting police investigations, evidence and discovery production/obligations,  making arrests, and/or in making probable cause determinations by Municipal Defendants and/or Chief Labombarde amounting to gross negligence and/or callous and/or deliberate indifference as to Plaintiff's constitutional rights and/or wrongful supervisory encouragement, condonation or acquiescence in constitutional rights-violating conduct.

149.    Police Officer Defendants' inadequate training, supervision, and/ or discipline as to conducting police investigations, evidence and discovery production/obligations, making arrests, and/or in making probable cause determinations directly and foreseeably resulted in the false arrest, and unlawful search and seizure of Plaintiff in violation of clearly established rights guaranteed to the Plaintiff by Article 1, Sections 1, 5, 6, and 6-A of the Maine Constitution and by the Fourth and Fourteenth Amendments to the United States Constitution.

150.    As a proximate and direct result of violation of Plaintiff's Constitutional rights, as foresaid, Plaintiff has suffered and continues to suffer grievous and long lasting injuries.

151.    Plaintiff has suffered and continues to suffer physical, emotional, and mental injuries and damages, medical expenses, pain and suffering, economic losses, lost wages and/or earnings opportunities, loss of enjoyment of life, and seeks compensatory damages, punitive damages, attorney fees and costs and all other relief available under the law.

**COUNT XII. VIOLATION OF 42 U.S.C. § 1983 False Arrest**
**(Municipal Defendants)**

152.   By reference, Plaintiff incorporates each and every allegation and averment contained in Paragraphs 1 through 151 as though fully set forth herein.

153.   Defendants Town of Waldoboro and/or WPD are the final policy makers for WPD in the substantive area of conducting police investigations, evidence and discovery production/obligations, making arrests and in making probable cause determinations.

154.   The policies, pattern of conduct, customs, practices and/ or procedures of the WPD, i.e. as to conducting police investigations, evidence and discovery production/obligations, making arrests and/or in making probable cause determinations were unconstitutional and/or grossly negligent amounting to deliberate indifference to Plaintiff's constitutional rights directly resulting in the false arrest and unlawful search and seizure of Plaintiff in violation of clearly established rights guaranteed to Plaintiff by Article 1, Sections 1, 5, 6, and 6-A of the Maine Constitution and by the Fourth and Fourteenth Amendments to the United States Constitution.

155.   As a proximate and direct result of violation of Plaintiff's Constitutional rights, as foresaid, Plaintiff has suffered and continues to suffer grievous and long lasting injuries.

156.   Plaintiff has suffered and continues to suffer physical, emotional, and mental injuries and damages, medical expenses, pain and suffering, economic losses, lost wages and/or earnings opportunities, loss of enjoyment of life, and seeks compensatory damages, punitive damages, attorney fees and costs and all other relief available under the law.

## COUNT XIII. VIOLATION OF 42 U.S.C. § 1983 Malicious Prosecution
### (Police Officers Defendants)

157.   By reference, Plaintiff incorporates each and every allegation and averment contained in Paragraphs 1 through 156 as though fully set forth herein.

158.    Police Officers Defendants wrongfully instituted and/or caused to be instituted with malice criminal proceedings and/or the continued institution of criminal proceedings against Plaintiff by arresting and/or causing the arrest of Plaintiff on November 21, 2014 and the Indictment against Plaintiff without probable cause for the crime and/or crimes of felony theft and/or by withholding of material and/or favorable exculpatory and/or impeaching evidence, and/or  by failing to make a complete and full statement of facts either to Defendant, the Grand Jury and/or to the District Attorney, and/or by misrepresenting/falsifying and/or hiding evidence and/or otherwise acting in bad faith.

159.    The criminal proceedings terminated in the Plaintiff's favor when the criminal Complaint was dismissed against Plaintiff on September 14, 2015.

160.    Defendants failed to conduct any or any reasonable police investigation into claimed crimes, caused the filing of a criminal Complaint against  Plaintiff without probable cause, continued prosecution of Plaintiff  without probable cause, and caused the Indictment without probable cause though the withholding of material and/or favorable exculpatory and/or impeaching evidence, and/or  by failing to make a complete and full statement of facts either to Defendant, the Grand Jury and/or to the District Attorney, and/or by misrepresenting/falsifying and/or hiding evidence and/or otherwise acting in bad faith, vitiating and/or stripping from the Indictment any conceivable probable cause making the Indictment invalid, unlawful and/or defective.

161.    As a proximate and direct result of Police Officer Defendants' wrongful acts in knowing violation of the law and/or when no reasonable competent officer would have concluded that the action was lawful, and/or Defendant Chief Labombarde actions and inaction amounting to gross negligence, reckless and/or callous and/or deliberate indifference and/or wrongful supervisory

encouragement, condonation or acquiescence in constitutional rights-violating conduct, Plaintiff was subjected to unlawful criminal proceedings, unlawful arrest, unlawful confinement, seizure of his person, deprivation of his liberty and/or subjected to the continued unlawful criminal proceedings, unlawful arrest, unlawful confinement, seizure of this person and deprivation of his liberty without probable cause.

162.    Police Officer Defendants, at all times material hereto, acted under color of the law.

163.    Police Officer Defendants' actions constituted malicious prosecution in violation of clearly established rights guaranteed to the Plaintiffs by Article 1, Sections 1, 5, 6, and 6-A of the Maine Constitution and by the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

164.    Police Officer Defendants individually and/or jointly deprived and/or continued to deprive Plaintiff either directly or indirectly, of his clearly established rights guaranteed to the Plaintiff by Article 1, Sections 1, 5, 6, and 6-A of the Maine Constitution and by the Fourth, Fifth and Fourteenth Amendments to the United States Constitution and/or conspired for the purpose of doing so.

165.    As a proximate and direct result of the malicious prosecution in violation of Plaintiff's Constitutional rights as foresaid, Plaintiff has suffered and continues to suffer grievous and long lasting injuries.

166.    Plaintiff has suffered and continues to suffer physical, emotional, and mental injuries and damages, medical expenses, pain and suffering, economic losses, lost wages and/or earnings opportunities, loss of enjoyment of life, and seeks compensatory damages, punitive damages, attorney fees and costs and all other relief available under the law.

**COUNT XIV. VIOLATION OF 42 U.S.C. § 1983 Malicious Prosecution**
**(Municipal Defendants and Defendant Labombarde)**

167.   By reference, Plaintiff incorporates each and every allegation and averment contained in Paragraphs 1 through 166 as though fully set forth herein.

168.   Defendants Town of Waldoboro through Defendant WPD are the employer of Police Officers Defendants and Municipal Defendants and/or Defendant Chief Labombarde set the policies and procedures for training, supervising and/or disciplining of Waldoboro police officers.

169.   Police Officers Defendants were inadequately trained, supervised, and/ or disciplined as to conducting reasonable police investigations, making arrests, in making probable cause determinations, as to evidence and discovery production/obligations, and as to causing criminal proceedings to be instituted or continuing to be instituted, by Municipal Defendants and/or Defendant Chief Labombarde amounting to gross negligence and/or callous and/or deliberate indifference as to Plaintiff's constitutional rights and/or wrongful supervisory encouragement, condonation or acquiescence in constitutional rights-violating conduct.

170.   Police Officer Defendants' inadequate training, supervision, and/ or discipline as to conducting reasonable police investigations, making arrests, in making probable cause determinations, as to evidence and discovery production/obligations, and as to causing criminal proceedings to be instituted or continuing to be instituted, directly and foreseeably resulted in the malicious prosecution and/or continued malicious prosecution of Plaintiff in violation of clearly established rights guaranteed to the Plaintiffs by Article 1, Sections 1, 5, 6, and 6-A of the Maine Constitution and by the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

171.   As a proximate and direct result of violation of Plaintiff's Constitutional rights, as foresaid, Plaintiff has suffered and continues to suffer grievous and long lasting injuries.

172.     Plaintiff has suffered and continues to suffer physical, emotional, and mental injuries and damages, medical expenses, pain and suffering, economic losses, lost wages and/or earnings opportunities, loss of enjoyment of life, and seeks compensatory damages, punitive damages, attorney fees and costs and all other relief available under the law.

### COUNT XV. VIOLATION OF 42 U.S.C. § 1983 Malicious Prosecution
### (Municipal Defendants)

173.     By reference, Plaintiff incorporates each and every allegation and averment contained in Paragraphs 1 through 172 as though fully set forth herein.

174.     Defendant Town of Waldoboro and/or WPD are the final policy makers for WPD in the substantive area of conducting reasonable police investigations, making arrests, in making probable cause determinations, as to evidence and discovery production/obligations, and as to causing criminal proceedings to be instituted or continuing to be instituted.

175.     The policies, pattern of conduct, customs, practices and/ or procedures of the WPD, i.e., as to conducting reasonable police investigations, making arrests, in making probable cause determinations, as to evidence and discovery production/obligations, and as to causing criminal proceedings to be instituted or continuing to be instituted, were unconstitutional and/or grossly negligent amounting to deliberate indifference to Plaintiffs' constitutional rights directly resulting in the malicious prosecution and/or continued malicious prosecution and resultant unlawful confinement, seizure, and deprivation of Plaintiff's liberty without probable cause in violation of clearly established rights guaranteed to Plaintiff by Article 1, Sections 1, 5, 6, and 6-A of the Maine Constitution and by the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

176.     As a proximate and direct result of violation of Plaintiff's Constitutional rights, as foresaid, Plaintiff has suffered and continues to suffer grievous and long lasting injuries.

177.    Plaintiff has suffered and continues to suffer physical, emotional, and mental injuries and damages, medical expenses, pain and suffering, economic losses, lost wages and/or earnings opportunities, loss of enjoyment of life and seeks compensatory damages, punitive damages, attorney fees and costs and all other relief available under the law.

## COUNT XVI. MALICIOUS PROSECUTION
### (All Defendants)

178.    By reference, Plaintiff incorporates each and every allegation and averment contained in Paragraphs 1 through 177 as though fully set forth herein.

179.    Municipal Defendants' agents, employees and/or servants, Defendants Chief Labombarde, Hesseltine, Jr, Fuller, and Santheson instituted, procured and/or continued to institute or procure without probable cause and/or caused to be instituted, procured and/or continued to be instituted or procured without probable cause the criminal proceedings against Plaintiffs under Lincoln County Court Docket Numbers CR-14-406 for crimes of felony theft.

180.    Defendants at no time, had reasonable or probable cause for believing that Plaintiff committed any criminal offense against Jordan Sr. and at no time had reasonable or probable cause to proceed with the Plaintiff's arrest and the institution or procurement and/or continued institution or procurement of criminal proceedings against Plaintiff without probable cause and/or the Indictment and/or withheld material and/or favorable exculpatory and/or impeaching evidence, and/or failed to make a complete and full statement of facts either to Defendant, the Grand Jury and/or to the District Attorney, and/or misrepresented/falsified and/or hid evidence and/or otherwise acted in bad faith causing the unlawful arrest and/or the institution or procurement and/or continued institution or procurement of criminal proceedings against Plaintiff and the Indictment.

181.   Defendants knew and/or should have known the initial arrest was unlawful and that there was no reasonable cause or probable cause to support the arrest, the continued arrest, the institution or procurement and/or continued institution or procurement of criminal proceedings against the Plaintiff.

182.   The Indictment thereafter being obtained through the Defendants withholding material and/or favorable exculpatory and/or impeachment evidence, and/or by failing to make a complete and full statement of facts either to Defendant, the Grand Jury and/or to the District Attorney, and/or by misrepresenting/falsifying and/or hiding evidence and/or otherwise acting in bad faith, vitiating and/or stripping from the Indictment any conceivable probable cause making the Indictment invalid, unlawful and/or defective.

183.   Defendants acted with malice and/or for purposes other then that of bringing the offender to justice, and/or with gross negligence in omitting to make suitable and reasonable inquiries before proceeding with the arrest and causing criminal proceedings to be instituted and/or continued to instituted against Plaintiff and/or by withholding material and/or favorable exculpatory and/or impeaching evidence, and/or by failing to make a complete and full statement of facts either to Defendant, the Grand Jury and/or to the District Attorney, and/or by misrepresenting/falsifying and/or hiding evidence and/or otherwise acting in bad faith.

184.   The Plaintiff received a favorable termination of the criminal proceedings when the criminal Complaint was dismissed.

185.   As a proximate and direct result of Defendant's wrongful acts, Plaintiff suffered and continues to suffer grievous and long lasting injuries.

As a result of the unlawful conduct of Defendants Plaintiff suffered and continues to suffer injuries and damages in which Defendants are liable.

## COUNT XVII. FALSE IMPRISONMENT
### (All Defendants)

186.    By reference, Plaintiff incorporates each and every allegation and averment contained in Paragraphs 1 through 185 as though fully set forth herein.

187.    Municipal Defendants' agents, employees and/or servants, Defendants Chief Labombarde, Hesseltine, Jr., Fuller and Santheson on or about November 21, 2014, arrested and/or caused to be arrested Plaintiff without probable cause.

188.    Plaintiff was unlawfully detained and/or restrained and confined and/or caused to be unlawfully detained, and/or restrained and confined against his will by Defendants and Plaintiff was conscious of the detainment, restraint and/or confinement.

189.    There was no authority and/or lawful authority to detain, and/or restrain and confine the Plaintiff as there was no probable cause he committed the criminal offenses in which he was arrested.

190.    The Indictment being obtained through the Defendants withholding material and/or favorable exculpatory and/or impeachment evidence, and/or by failing to make a complete and full statement of facts either to Defendant, the Grand Jury and/or to the District Attorney, and/or by misrepresenting/falsifying and/or hiding evidence and/or otherwise acting in bad faith, vitiating and/or stripping from the Indictment any conceivable probable cause making the Indictment invalid, unlawful and/or defective.

191.    As a proximate and direct result of the foregoing acts, Plaintiff was wrongfully arrested and incarcerated for crimes he did not commit.

192.    As a proximate and direct result of Defendant's wrongful acts, Plaintiff suffered and continues to suffer grievous and long lasting injuries.

As a result of the unlawful conduct of Defendants Plaintiff suffered and continues to suffer injuries and damages in which Defendants are liable.

## COUNT XVIII. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (All Defendants)

193. By reference, Plaintiff incorporates each and every allegation and averment contained in Paragraphs 1 through 192 as though fully set forth herein.

194. Defendants intentionally and/or recklessly inflicted severe emotional distress upon Plaintiff or it was certain or substantially certain that such distress would result from Defendants' conduct.

195. The conduct was so extreme and outrageous as to exceed all possible bounds of decency and/or must be regarded as atrocious and/or utterly intolerable in a civilized community.

196.    The conduct of the Defendants caused Plaintiff emotional distress.

197.    The emotional distress suffered by the Plaintiffs was so severe that no reasonable person could be expected to endure it.

198.    As a result of the wrongful conduct, Plaintiff suffered and continues to suffer injuries and damages.

As a result of the unlawful conduct of Defendants Plaintiff suffered and continues to suffer injuries and damages in which Defendants are liable.

## COUNT XIX. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (All Defendants)

199.    By reference, Plaintiff incorporates each and every allegation and averment contained in Paragraphs 1 through 198 as though fully set forth herein.

200.    Defendants owed Plaintiff a duty of care not to cause him emotional harm and/or emotional distress.

201.   As a result of the negligence of Defendants Plaintiff suffered severe emotional distress which was or should have been foreseeable to Defendants.

202.   As a result of the joint and/or several negligence of Defendants Plaintiff suffered and continues to suffer injuries and damages in which Defendants are liable.

As a result of the unlawful conduct of Defendants Plaintiff suffered and continues to suffer injuries and damages in which Defendants are liable.

### COUNT XX. VIOLATION OF 42 U.S.C. § 1983 Due Process/Defamation
### (Police Officers Defendants)

203.   By reference, Plaintiff incorporates each and every allegation and averment contained in Paragraphs 1 through 202 as though fully set forth herein.

204.   Police Officer Defendants including Defendant Chief Labombarde and Defendant Hesseltine, Jr. made false and defamatory statements concerning Plaintiff to the public and/or to third parties to the effect that Plaintiff's committed the serious criminal conduct of felony theft and/or that there was probable cause to believe the Plaintiff committed this serious criminal conduct, and/or that Plaintiff committed elder abuse and/or Defendants including Defendant Chief Labombarde and Defendant Hesseltine, Jr. made defamatory statements that implied the existence of defamatory facts falsely implicating Plaintiff in the serious criminal conduct or elder abuse. The statements included but are not limited to the statements as set forth in paragraph 69 herein.

205.   The statements were unprivileged and made when Police Officer Defendants knew the statements to be false and/or made in recklessly disregard of truth or falsity and/or with malice.

206.   As a proximate and direct result of Defendants' unlawful acts in knowing violation of the law and/or when no reasonable competent officer would have concluded that the action was lawful, and/or Defendant Chief Labombarde's actions and inaction amounting to gross

39

negligence, reckless and/or callous and/or deliberate indifference and/or wrongful supervisory encouragement, condonation or acquiescence in constitutional rights-violating conduct, Plaintiff suffered harm and was deprived of life, liberty and/or property, without due process of law including as to reputation, physical, mental and emotional health, employment, and professional and employment opportunities.

207.    Defendants, at all times material hereto, acted under color of the law.

208.    Defendants' actions constituted a violation of Plaintiff's due process rights as a result of defamation and caused the deprivation of Plaintiff's life, liberty and/or property rights without due process of law in violation of clearly established rights guaranteed to the Plaintiffs by Article 1, Sections 1, 5, 6, and/or 6-A of the Maine Constitution and by the Fifth and Fourteenth Amendments to the United States Constitution.

209.    As a proximate and direct result of violation of Plaintiff's Constitutional rights as foresaid, Plaintiff has suffered and continues to suffer injuries and damages including to his reputation, employment, professional and employment opportunities, physical, and mental and emotional health.

210.    Plaintiff has suffered and continues to suffer physical, emotional, and mental injuries and damages, medical expenses, pain and suffering, economic losses, loss of employment, lost wages and/or earnings opportunities, loss of reputation, loss of enjoyment of life, and seeks compensatory damages, punitive damages, attorney fees and costs and all other relief available under the law.

### COUNT XXI. VIOLATION OF 42 U.S.C. § 1983 Due Process/Defamation
### (Municipal Defendant and Defendant Chief Labombarde)

211.   By reference, Plaintiff incorporates each and every allegation and averment contained in Paragraphs 1 through 210 as though fully set forth herein.

212.   Defendant Town of Waldoboro through WPD are the employer of Police Officer Defendants and Municipal Defendants and/or Defendant Chief Labombarde set the policies and procedures for the training, supervising and/or disciplining of Waldoboro police officers.

213.   Police Officer Defendants were inadequately trained, supervised, and/ or disciplined in conducting reasonable police investigations, making arrests, as to evidence and discovery production/obligations, in making probable cause determinations, as to causing criminal proceedings to be instituted or continuing to be instituted, and in making public and/or to third parties statements concerning others and/or regarding police investigations by Municipal Defendants and/or Defendant Chief Labombarde amounting to gross negligence and/or callous and/or deliberate indifference as to Plaintiff's constitutional rights and/or wrongful supervisory encouragement, condonation or acquiescence in constitutional rights-violating conduct.

214.   Police Officer Defendants' inadequate training, supervision, and/ or discipline in conducting reasonable police investigations, making arrests, as to evidence and discovery production/obligations, in making probable cause determinations, as to causing criminal proceedings to be instituted or continuing to be instituted, and in making public and/or to third parties statements concerning others and/or of or regarding police investigations directly and foreseeably resulted in a due process violation as result of defamation and caused the deprivation of Plaintiff's life, liberty and/or property rights without due process of law in violation of clearly established rights guaranteed to the Plaintiffs by Article 1, Sections 1, 5, 6, and/or 6-A of the Maine Constitution and by the Fifth and Fourteenth Amendments to the United States Constitution.

215.  As a proximate and direct result of violation of Plaintiff's Constitutional rights, as foresaid, Plaintiff has suffered and continues to suffer grievous and long lasting injuries including as to his reputation, physical, mental and emotional health, employment, professional and employment opportunities.

216.  Plaintiff has suffered and continues to suffer physical, emotional, and mental injuries and damages, medical expenses, pain and suffering, economic losses,  loss of employment, lost wages and/or earnings opportunities, loss of reputation, loss of enjoyment of life, and loss of companionship of children, and seek compensatory damages, punitive damages, attorney fees and costs and all other relief available under the law.

### COUNT XXII. VIOLATION OF 42 U.S.C. § 1983 Due Process/Defamation
### (Municipal Defendants)

217.   By reference, Plaintiff incorporates each and every allegation and averment contained in Paragraphs 1 through 216 as though fully set forth herein.

218.   Defendant Town of Waldoboro and/or WPD are the final policy makers for WPD in the substantive area of conducting police investigations, making arrests, as to evidence and discovery production/obligations, in making probable cause determinations, as to causing criminal proceedings to be instituted or continuing to be instituted, and in making public and/or to third parties statements concerning others and/or police investigations.

219.   The policies, pattern of conduct, customs, practices and/ or procedures of the Waldoboro Police Department, i.e., as to conducting police investigations, making arrests, as to evidence and discovery production/obligations, in making probable cause determinations, as to causing criminal proceedings to be instituted or continuing to be instituted, and in making public and/or to third parties statements concerning others and/or regarding police investigations were unconstitutional and/or grossly negligent amounting to deliberate indifference to Plaintiff's

constitutional rights directly resulting in a due process violation as result of defamation and

caused the deprivation of Plaintiff's life, liberty and/or property rights without due process of

law in violation of clearly established rights guaranteed to the Plaintiffs by Article 1, Sections 1,

5, 6, and/or 6-A of the Maine Constitution and by the Fifth and Fourteenth Amendments to the

United States Constitution.

220. As a proximate and direct result of violation of Plaintiff's Constitutional rights Plaintiff has

suffered and continues to suffer grievous and long lasting injuries including as to his reputation,

physical, mental and emotional health, employment, employment opportunities, and/or loss of

companionship of their children.

221.    Plaintiff has suffered and continues to suffer physical, emotional, and mental

injuries and damages, medical expenses, pain and suffering, economic losses,  loss of

employment, lost wages and/or earnings opportunities, loss of reputation, loss of enjoyment of

life,  and seeks compensatory damages, punitive damages, attorney fees and costs and all other

relief available under the law.

## COUNT XXIII. DEFAMATION
### (All Defendants)

222. By reference, Plaintiff incorporates each and every allegation and averment contained in

Paragraphs 1 through 221 as though fully set forth herein.

223. Municipal Defendants agents, employees and/or servants including Defendants, Chief

Labombarde and Hesseltine, Jr. made false and defamatory statements concerning Plaintiff to the

public and/or third parties to the effect that Plaintiff committed the serious criminal conduct of

felony theft and/or that there was probable cause to believe the Plaintiff committed this serious

criminal conduct, and/or that Plaintiff committed elder abuse and/or Defendants made

defamatory statements that implied the existence of defamatory facts falsely implicating Plaintiff

in the serious criminal conduct and/or elder abuse. The statements include but are not limited to the statements as set forth in paragraph 69 herein.

224. The statements were unprivileged and made with negligence and/or when Defendants knew the statements to be false and/or made in recklessly disregards of truth or falsity and/or with malice.

225. The statements were slander *per se* and as a proximate and direct cause of Defendants' wrongful acts, Plaintiff suffered and continue to suffer special harm and grievous and long lasting injuries including to his reputation, employment, professional and employment opportunities, physical, mental and emotional health.

As a result of the unlawful conduct of Defendants Plaintiff suffered and continues to suffer injuries and damages in which Defendants are liable.

## COUNT XXIV. FALSE LIGHT
### (All Defendants)

226. By reference, Plaintiff incorporates each and every allegation and averment contained in Paragraphs 1 through 225 as though fully set forth herein.

227. Municipal Defendants' agents, employees and/or servants including Defendants Chief Labombarde and Hesseltine, Jr. gave publicity to the public matters concerning the Plaintiff to the effect that Plaintiff committed the serious criminal conduct of felony theft and/or that there was probable cause to believe the Plaintiff committed this serious criminal conduct, and/or that Plaintiffs committed elder abuse and/or Defendants gave publicity to the public matters concerning Plaintiff that implied the existence of defamatory facts falsely implicating Plaintiff in the serious criminal conduct and/or elder abuse. The publicity included but is not limited to the statements as set forth in paragraph 69  herein.

228. Defendants gave publicity to the matters with knowledge of the falsity and/or in reckless disregard as to the truth or falsity and the false light in which the Plaintiff would be placed.

229. Due to the wrongful actions of Defendants, Plaintiff was placed before the public in a false light which would be highly offensive to a reasonable person and which was highly offensive to Plaintiff.

230. As a proximate and direct cause of Defendants' wrongful acts, Plaintiff suffered and continues to suffer grievous and long lasting injuries.

As a result of the unlawful conduct of Defendants Plaintiff suffered and continues to suffer injuries and damages in which Defendants are liable.

## COUNT XXV. VICARIOUS LIABILITY
### (Municipal Defendants)

231. By reference, Plaintiff incorporates each and every allegation and averment contained in Paragraphs 1 through 230 as though fully set forth herein.

232. Defendant Town of Waldoboro and/or Waldoboro Police Department's servants, agents and/or employees, including but not limited to Police Officer Defendants, Chief Labombarde, Hesseltine, Jr., Fuller, and Santheson were at all times material hereto acting within the course and scope of their employment.

233. Municipal Defendants are vicariously liable for the unlawful and/or tortious conduct of their agents, employees and/or servants, including but not limited to Police Officer Defendants Chief Labombarde, Hesseltine, Jr., Fuller, and Santheson that caused injuries and damages to Plaintiff.

## XXVI. PUNITIVE DAMAGES
### (All Defendants)

234. By reference, Plaintiff incorporates each and every allegation and averment contained in Paragraphs 1 through 233 as though fully set forth herein.

235. Defendants acted with malicious, reckless or callous disregard for Plaintiff's state and federal protected rights and/or intentionally violated federal and state law.

236. Defendants acted with malice toward Plaintiff and/or Defendants' conduct was so outrageous toward Plaintiff that malice can be implied.

237. Plaintiff is entitled to punitive damages.

Due to the unlawful and/or tortious conduct of Defendants Plaintiff has suffered and continues to suffer physical, emotional, and mental injuries and damages, medical expenses, pain and suffering, mental and emotional distress, permanent injuries, humiliation, loss of reputation, lost wages and/or earnings opportunities, loss of professional and employment opportunities, economic losses, loss of enjoyment of life, and seeks compensatory damages, punitive damages, attorney fees and costs and all other relief available under the law.

**WHEREFORE,** Plaintiff respectfully requests this Court enter judgment for Plaintiff as to Counts I. through XXVI, and enter an assessment of damages sufficient to fairly and reasonably compensate the Plaintiff for all injuries and damages sustained together with an award of punitive damages, attorney fees, costs and interest and any other relief available under the law.

Dated at Kennebunk, Maine this 12th day of January 2017.

Karen Wolfram, Esq. (Bar No: 9312)
Attorney for Plaintiffs
Maine Legal Associates, P.A.
Fairfield & Associates, P.A.
11 Maine Street, Suite 1
Kennebunk, ME
(207)985-1199
Karen@fairfieldandassociates.com

CONFORMED COPY

Appointment of Agent
Financial Power of Attorney

Principal: SCOTT M. JORDAN, SR.

Agent: SCOTT M. JORDAN, JR.

THAT I, SCOTT M. JORDAN, SR., the Principal, of the Town of Waldoboro, in the County of Lincoln and State of Maine, hereby designate SCOTT M. JORDAN, JR. as my agent and attorney-in-fact to act in my name and for my benefit in a fiduciary capacity and hereby revoking any other powers of attorney previously granted.

GENERAL POWERS:

General Grant of Power.  I confer upon my agent full power to administer my personal and business affairs and to deal with all of my property, whether standing in my name alone or in my name with any other person or persons.  I intend to grant all of the authorities to my agent as set forth in the Maine Uniform Power of Attorney Act, 18-A M.R.S.A. § 5-934 through § 5-946, as the same may be amended from time to time.  I further specifically and expressly grant my Agent the power and authority to perform the acts set forth in 18-A, M.R.S.A. §5-931 (a), (1) through (8).  My agent shall on my behalf have full power to exercise or perform any act, power, duty, right, or obligation whatsoever that I now have or may hereinafter acquire, relating to any person, matter, transaction, or property, real or personal, tangible, intangible, or mixed, now owned or hereafter acquired by me, as I might or could do if personally present, including, without limitation, and, by way of example, the following specifically enumerated powers:

1.  To enter upon and take possession of any lands, buildings, tenements or other structures, or any part or parts thereof, that may belong to me, or to the possession whereof I may be entitled; to ask, collect and receive any rents, profits, issues or income of any and all of such lands, buildings, tenements or other structures, or of any part or parts thereof, and to manage any such lands, and to manage, repair, alter, rebuild or reconstruct any buildings, houses or other structures, or any part or parts thereof, that may now or hereafter be erected upon any such lands.

2.  To make, execute, endorse, accept and deliver any and all checks, drafts, notes, bills of exchange and trade acceptances and to pay all sums of money at any time or times that may hereafter be owing by me upon any check, draft, note, bill of exchange or trade acceptance made, executed, endorsed, accepted and delivered by me, or for me, and in my name, by my said agent.



EXHIBIT

A

SHIPPED DEC 16 2014

3.  To demand, sue for, collect, recover and receive all goods, claims, debts, monies, interest and demands whatsoever now due, or that may hereafter be due or belong to me, and to make, execute and deliver receipts, releases or other discharges therefor, under seal or otherwise.

4.  To institute, prosecute, defend, settle, adjust, compound, submit to arbitration, compromise and dispose of all actions, suits, accounts, reckonings, claims and demands, or other proceedings whatsoever that are now, or hereafter shall be, pending between me and any person, firm, corporation, government or agency or administrative body thereof, in such manner and in all respects as my said agent shall think fit, or otherwise engage in litigation in connection with the premises.

5.  To sell any and all shares of stock, bonds or other securities now or hereafter belonging to me that may be issued by any association, trust or corporation, whether public or private, and to make, execute and deliver an assignment or assignments thereof; and to act as my agent or proxy in respect to any shares of stocks, bonds or other investments and securities, and rights and interest therein, which I may now or hereafter own or hold.

6.  To buy, purchase, receive, lease, accept or otherwise acquire any property whatsoever, or any interest or right therein, upon such terms as my said agent shall think proper, to take, hold, possess, invest, lease or otherwise manage the same, to maintain, protect, preserve, insure, remove, store, transport or improve the same, or any part thereof, and to sell, convey, mortgage, hypothecate, pledge or otherwise encumber and dispose of the same, or any right or interest thereon, or any part thereof, upon such terms as my said agent shall think proper, and to enter and to surrender any safe deposit boxes or vaults in banks or storage institutions.

7.  To lease, let and demise for such periods and terms and at such rents, and subject to such conditions as my said agent shall see fit, all or any of my real estate, lands, buildings, tenements or other structures; and to grant, bargain and sell all or any of my real estate, lands, buildings, tenements and other structures or any part or parts thereof, for such price and on such terms as to my said agent shall seem proper; and to make, execute, acknowledge and deliver good and sufficient deeds of conveyance, leases or other instruments for the conveyance, lease or transfer of the same, either with or without covenants or warranty, as my agent shall see fit; and also to release any dower or statutory interest which I may have in any lands and real estate owned by my spouse.

8.  To borrow any sum or sums of money on such terms and with such security, whether real or personal property, as my agent shall think fit, and for that purpose to execute all promissory notes, bonds, mortgages and other instruments which may be necessary or proper.

9.  To make gifts of any property, whether real, personal or mixed, outright or in trust on such terms and conditions, with such trustee or trustees, and whether revocable or irrevocable, as my agent may consider advisable or appropriate, which gifts may be made to

SHIPPED DEC 1 6 2014

or for the benefit of my agent, my agent's spouse, or any other person considered by my attorney to be an object of my bounty, whether or not any such gift is taxable under the Internal Revenue Code of 1986, as amended from time to time either before or after the date hereof, or under any other law, and whether or not any such gift is consistent with any prior giving pattern of mine or with any will or testamentary substitute executed by me before or after the date hereof.

10.  To release or disclaim on my behalf any interest in property acquired by intestate, testate or *inter vivos* transfer, including through exercising or surrendering any right to revoke a revocable trust;

11.  To apply for and to receive any government, insurance and retirement benefits or payment options; to terminate such benefits; to change beneficiaries or ownership of such benefits; and to assign rights or receive cash value in return for the surrender of any or all rights I may have in life insurance policies or benefits, annuity policies, plans or benefits, mutual fund and other dividend investment plans and retirement, profit-sharing and employee welfare plans and benefits.

12.  To engage, hire and dismiss agents, counsel, clerks, workmen, employees and others, and to pay and allow such remuneration for their services as my said agent shall think fit.

13.  To enter into, make, sign, execute, deliver, acknowledge and perform any contract, agreement, writing or thing that may, in the opinion of my said agent, be necessary or proper to be entered into, made, signed, sealed, executed and delivered, acknowledged or performed.

14.  To constitute and appoint, in my agent's place and stead and as my agent's substitute, one agent or more, to exercise for me as my agent or agents any or all of the powers and authorities hereby conferred, with full power of revocation.

15.  To consent to, withhold consent to, or approve on my behalf any medical or other professional care, counsel, treatment or service to be rendered to me or on my behalf by a licensed or certified professional person or institution engaged in the practice of or providing a healing art and to have access to and possession of any information about my physical and mental health.

16.  To prepare, sign and file federal, state and local income, gift or other tax returns of all kinds, claims for refunds, requests for extensions of time, petitions to the United States Tax Court or other courts regarding tax matters and any and all other tax related documents and to receive and obtain copies of the same, including, without limitation, receipts, offers, waivers, consents (including, but not limited to, consents and agreements under Internal Revenue Code 2032A, or its successor), powers of attorney, and closing agreements; to exercise any elections I may have under federal, state and local tax law; and generally to act on my behalf in all tax matters of all kinds and for all periods before all persons representing

SHIPPED DEC 1 6 2014

the Internal Revenue Service and any other taxing authority, including receipt of confidential information and the posting of bonds.

17.  Without in any way limiting the foregoing, generally to do, execute and perform any other act, deed, matter or thing whatsoever that ought to be done, executed and performed, or that, in the opinion of my said agent, ought to be done, executed or performed in and about the premises of every nature and kind whatsoever, as fully and effectually as I could do if personally present.

The interpretation and construction of the provisions of this Appointment of Agent/Financial Power of Attorney shall be governed by the laws of the State of Maine.

And I, the said SCOTT M. JORDAN, SR., hereby RATIFY AND CONFIRM and

promise at all times to ratify and confirm all and whatsoever my agent, shall lawfully do or

cause to be done in and about the premises by virtue of these presents, including anything

which shall be done between the revocation of these presents, by my death or in any other

manner, and notice of such revocation reaching my agent, and I hereby declare that as

against me and all persons claiming under me everything which my agent shall do or cause

to be done in pursuance hereof after such revocation as aforesaid shall be valid and effectual

in favor of any person claiming the benefit thereof, who before doing thereof shall not have

had notice of such revocation.  This power of attorney shall not be affected by disability or

incapacity of the principal, or by lapse of time.

Notice to the Principal:  As the "Principal", you are using this power of attorney to grant power to another person (called the Agent) to make decisions about your property and to use your property on your behalf.  Under this power of attorney you give your Agent broad and sweeping powers to sell or otherwise dispose of your property without notice to you.  Under this document your Agent will continue to have these powers after you become incapacitated. The powers that you give your Agent are explained more fully in the Maine Uniform Power of Attorney Act, Maine Revised Statutes, Title 18-A, Article 5, Part 9.  You have the right to revoke this power of attorney at any time as long as you are not incapacitated.  If there is anything about this power of attorney that you do not understand, you should ask a lawyer to explain it to you.

Notice to the Agent:  As the "Agent", you are given power under this power of attorney to make decisions about the property belonging to the Principal and to dispose of the Principal's

SHIPPED DEC 16 2014

property on the Principal's behalf in accordance with the terms of this power of attorney.  This power of attorney is valid only if the Principal is of sound mind when the Principal signs it. When you accept the authority granted under this power of attorney, a special legal relationship is created between you and the Principal.  This relationship imposes upon you legal duties that continue until you resign or the power of attorney is terminated or revoked. The duties are more fully explained in the Maine Uniform Power of Attorney Act, Maine Revised Statutes, Title 18-A, Article 5, Part 9 and Title 18-B, Sections 802 to 807 and Title 18-B, Chapter 9. As the Agent, you are generally not entitled to use the Principal's property for your own benefit or to make gifts to yourself or others unless the power of attorney gives you such authority.  If you violate your duty under this power of attorney, you may be liable for damages and may be subject to criminal prosecution. You must stop acting on behalf of the Principal if you learn of any event that terminates this power of attorney or your authority under this power of attorney.  Events of termination are more fully explained in the Maine Uniform Power of Attorney Act and include, but are not limited to, revocation of your authority or of the power of attorney by the Principal, the death of the Principal or the commencement of divorce proceedings between you and the Principal.  If there is anything about this power of attorney or your duties under it that you do not understand you should ask a lawyer to explain it to you.

IN WITNESS WHEREOF, I have hereunto set my hand and seal at Rockport, in the County of Knox and State of Maine this _15_ day of May, 2014.

Signed, Sealed and Delivered
    in presence of:

_Kylie Wadsworth_                                        _Scott M. Jordan Sr._
Witness                                                 Scott M. Jordan, Sr.
Printed Name: _Kylie Wadsworth_


STATE OF MAINE
COUNTY OF KNOX, SS.                                     May _15_, 2014

Then personally appeared the above-named SCOTT M. JORDAN, SR. known to me (or satisfactorily proven to me) to be the individual described in this instrument and acknowledged the above instrument to be his free act and deed.

                                                       Before me,

Elizabeth B. Hilchey, Notary Public
        State of Maine                                 _Elizabeth Hilchey_
My Commission Expires 7/13/2015                        Notary Public/Attorney at Law

State of _ME_, County of _Knox_
F:\SYS\USER\PAM\PAM.WP\JORDAN\Scott JR9\3\Appointment of Agent\Financial Power of Attorney\Principal.wpd
Signed before me on this _15_ day
of _May, 2014_
Notary Public _Elizabeth Hilchey_

                                                       L SHIPPED DEC 1 6 2014

State of Maine
Lincoln, ss

District Court
District Six
Division of Lincoln

## SEARCH WARRANT

**TO:** Any officer authorized by law to execute this search warrant. On the basis of the affidavit, written by Officer Lawrence W. Hesseltine of the Waldoboro Police Department, dated November 20th, 2014. Which affidavit(s) is/are attached to the original hereof and made a part thereof to be filed in the District Court;

I am satisfied that there is probable cause to believe that there are grounds for the issuance of a search warrant. You are therefore commanded to search the place(s) and/or person(s) described below for the property and/or person(s) described below and, if the property and/or person(s) is/are found, to seize such property and/or person(s) and prepare a written inventory of the property seized.

### Place(s) and/or Persons(s) to be searched:

1.  The residence of Scott Jordan Jr. located at 661 Whites Bridges Rd #15, Tax Map/Lot: 058 / 013/ 015, Town of Standish, County of Cumberland, State of Maine. The residence is more fully described as a single family ranch cabin, white in color. The cabin is part of Sebago Resort Condominiums.

2.  Any and all vehicles, boats and/or outbuildings on the premises.

### Property or article(s) to be searched and / or seized:

1.  2003 Chevrolet 2500 Extended Cab Pick-up Truck Vin#: 1GCHK29U23E235649, Color-Green including Title Certificate.

2.  12-Guage Pump Shotgun – Camo Color

3.  410 Single Shot Shotgun

4.  22 Caliber Revolver – 9 Shot Color - Black



EXHIBIT
B

SHIPPED DEC 1 6 2014

5. 2-Cycle Mantis Tiller – Color – Red

6. Any Antiques, collectibles, Art Work, and any other property clearly belonging to Scott Jordan Sr. including: Craftsman Electric Drill, Craftsman Skill Saw, Craftsman Chop Saw, Craftsman ½ inch socket set, 1 pair of Aluminum saw horses, 1 handmade unfinished wooden doll house w/garage, 1 electric belt knife and tool sharpener, 3  2-Gallon Tubs of Textured ceiling paint, 1 Window Air Conditioning Unit, pair of Binoculars, 3 television sets, Electric Can Opener, Outdoor gas cooker w/3 propane tanks, Vegetable Steamer, 1 Piece of Disney Artwork.

7. Any financial documentation to include bank records and receipts showing the disposition of Scott Jordan Sr's property.

## (X) DAYTIME WARRANT ONLY

This warrant shall be executed between the hours of 7:00 A.M. and 9:00 P.M. and shall be returned, together with a written inventory, within 10 days of the issuance hereof, to the Lincoln Division of the Sixth District of the District Court of Maine.

## ( ) EITHER NIGHTIME OR DAYTIME WARRANT

For reasonable cause shown in the affidavit(s)/evidence, this warrant may be executed in the daytime or in the nighttime (9:00 P.M. to 7:00 A.M.) and shall be returned together with a written inventory, within 10 days of the issuance hereof, to the Lincoln Division of the Sixth District of the District Court of Maine.

## ( ) UNANNOUNCED EXECUTION OF SEARCH WARRANT

For reasonable cause shown, this warrant may be served by an officer without providing notice of the officer's purpose and office.

Issued at _____Wiscasset_____ in the County of Lincoln

On _____Nov. 20_____, 2012  2014

_____Susan Sparaco_____
Judge, Maine District Court
Justice of the Peace

SHIPPED DEC 1 6 2014

STATE OF MAINE DISTRICT COURT
LINCOLN , SS                                           SITTING AT WISCASSET
CRIMINAL ACTION                                        DOCKET NO._____

## AFFIDAVIT AND REQUEST FOR SEARCH WARRANT
[M.R. CRIM. P. 41]

To any Judge of the District Court or Justice of the Peace:

I, Lawrence W. Hesseltine, Police Officer for the Waldoboro Police Department, Lincoln County, State of Maine, apply for a search warrant to search the person(s), place(s) or other property described below and to seize the property or person(s) also described below.

**Description of place(s) or person(s) to be searched:**

1.   The residence of Scott Jordan Jr. located at 661 Whites Bridge Rd #15, Tax Map/Lot: 058 / 013/ 015, Town of Standish, County of Cumberland, State of Maine.  The residence is more fully described as a single family ranch cabin, white in color.  The cabin is part of Sebago Resort Condominiums.

2.   Any and all vehicles, boats and/or outbuildings on the premises.

**Owner / Occupant(if known):**  Scott Jordan Jr.

**Description of property or person(s) to be seized and searched:**

1.   2003 Chevrolet 2500 Extended Cab Pick-up Truck Vin#: 1GCHK29U23E235649, Color-Green including Title Certificate.

2.   12-Guage Pump Shotgun – Camo Color

3.   410 Single Shot Shotgun

4.   22 Caliber Revolver – 9 Shot Color - Black

5.   2-Cycle Mantis Tiller – Color – Red

6.   Any Antiques, collectibles, Art Work, and any other property clearly belonging to Scott Jordan Sr. including: Craftsman Electric Drill, Craftsman Skill Saw, Craftsman Chop Saw, Craftsman ½ inch socket set, 1 pair of Aluminum saw horses, 1 handmade unfinished wooden doll house w/garage, 1 electric belt knife and tool sharpener, 3  2-Gallon Tubs of Textured ceiling paint, 1 Window Air Conditioning Unit, pair of Binoculars, 3 television sets, Electric Can Opener, Outdoor gas cooker w/3 propane tanks, Vegetable Steamer, 1 Piece of Disney Artwork.

7.   Any financial documentation to include bank records and receipts showing the disposition of Scott Jordan Sr's property.

**Reason for Seizure:**

The property constitutes evidence of the commission of the criminal offense and/or the property is designed or intended for the use or which had been used as the means of committing a criminal offense and/or the property

SHIPPED DEC 1 6 2014

is contraband. The offenses being, *Theft By Unauthorized Taking or Transfer, Title 17-A M.R.S.A. Sec. 353.1.A.2. Class B*   All described property is seizable under Maine Law as evidence of a crime as stolen property.

## Statement of Probable Cause:

- On May 12th, 2014 Scott Jordan Sr. was admitted to Penbay Medical Center.

- On May 15th, 2014 Scott Jordan Jr. presented Scott Jordan Sr. with paperwork requesting he appoint himself as his father's **Financial Power of Attorney**.

- On May 15th 2014 Scott Jordan Sr. signed Financial Power of Attorney granting appointment to Scott Jordan Jr.

- Scott Jordan Sr. remained in the Hospital at PenBay Medical Center for the next 10 days. Over the course of these 10 days he and his son talked about his personal property including many antiques from an antique business Scott Jordan Sr. operates from his residence. Scott Jordan Jr. was setting up a sale for many of these items. Scott Jordan Sr. insisted the sale take place after he was released from the hospital as Scott Jordan Jr. was not familiar with the value of the antiques.

- Scott Jordan Sr. was discharged from PenBay Medical center and picked up by Scott Jordan Jr. Scott Jordan Sr. was on strict diet restrictions and Scott Jordan Jr. was acting as his father's dietician. Scott Sr. left the hospital at 4p.m. and requested they stop and get 2 slices of cheese pizza as it was allowed on his diet plan. Scott Jordan Jr. refused to stop telling Scott Jordan Sr. he had errands to run.

  At approx. 7p.m. that evening, 3 hours after he was released from the hospital Scott Jordan Jr. took Scott Jordan Sr. to Applebee's in Thomaston for dinner. Scott Jordan Jr. acting as Scott Jordan Sr's. dietician allowed him to order items off the menu that were not allowed per the restricted diet plan.

- The following morning after Applebee's Scott Jordan Sr. was admitted again to PenBay Medical Center for the next 11 days. During this 11 day period Scott Jordan Jr. sold off many of Scott Jordan Sr's. Antiques and personal belongings. One item was an enclosed trailer which was sold for $2000.00. $500.00 of this was used to pay a debt to Scott Jordan Sr's sister. The remaining $1500.00 was to be paid to the Town of Waldoboro for property taxes. Scott Jordan Jr. failed to pay the property taxes to the Town of Waldoboro as instructed/requested by Scott Jordan Sr.

- Acting as Power of Attorney, Scott Jordan Jr. signed over to himself Scott Jordan Sr's. 2003 Chevrolet Pick-up Truck and registered it under his own name. Scott Jordan Jr. left Scott Jordan Sr. with his 2001 Ford Super Duty F-350 Truck. Scott Jordan Jr. refuses to return Scott Jordan Sr's truck after many requests from Scott Jordan Sr.

- Acting as Power of Attorney, Scott Jordan Jr. removed 3 firearms from Scott Jordan Sr's. residence, and refuses to return them after many requests from Scott Jordan Sr. claiming Scott Jordan Sr. is suicidal.

- Scott Jordan Sr. was in the hospital for most of June and July 2014 and was released on July 18th. During his time in the hospital he would have had 2 Social Security checks direct deposited into his Rockland Savings and Loan checking account totaling $2,002.00. There would have also been 2 VA direct deposits into the same account totaling $106.00. Plus any other money from the sale of antiques

SHIPPED DEC 6 2014

and personal property.

o   Scott Jordan Sr. was regaining his health and began to question things and felt Scott Jordan Jr. was not acting in his best interest but, was doing things to his own benefit. Scott Jordan Sr. reported he was missing 3 firearms, a 12-Guage Pump Shotgun, single shot 410 Shotgun, and a 22 Caliber 9 shot Revolver. Other Property includes: Craftsman Electric Drill, Craftsman Skill Saw, Craftsman Chop Saw, Craftsman ½ inch socket set, 1 pair of Aluminum saw horses, 1 handmade unfinished wooden doll house w/garage, 1 electric belt knife and tool sharpener, 3 2-Gallon Tubs of Textured ceiling paint, 1 Window Air Conditioning Unit, pair of Binoculars, 3 television sets, Electric Can Opener, Outdoor gas cooker w/3 propane tanks, Vegetable Steamer, 1 Piece of Disney Artwork.


Approx. a week after his release from the hospital Scott Jordan Sr. drove Scott Jordan Jr's 2001 Ford Super Duty F-350 to Standish to confront him and requested his truck and his Rockland Savings and Loan debit card. Scott Jordan Jr. refused to return the 2003 Chevrolet truck to Scott Jordan Sr. Scott Jordan Jr. did return the debit card to Scott Jordan Sr. Scott Jordan Sr. drove back to Waldoboro in the 2001 Ford Super Duty and went to Rockland Savings and Loan to check the balance of his checking account. Scott Jordan Sr. was told by bank staff there was a balance of $38.00 in his checking account.

•   On July 31st 2014 Scott Jordan Sr. sent Scott Jordan Jr. a notice revoking the Financial Power of Attorney.

•   On August 6th 2014 Scott Jordan Sr's Attorney, Willard Pease sent Scott Jordan Jr. a letter requesting financial accounting activities including an explanation of approx. $3000.00 from the sale of Antiques. Scott Jordan Jr. sent a letter to Attorney Pease dated August 12th, 2014 refusing to supply financial details. Scott Jordan Jr. did state in this letter he would return to the 2003 Chevrolet to his father only after Scott Jordan Sr. repaired the AC Unit on the 2001 Ford, which was inoperable before he left it with his father.

•   In October 2014 Scott Jordan Sr. received a Wireless Statement in the mail from AT&T Wireless Account number 155024737753. The statement was a bill for $305.70, the phone number listed on the statement was 207-776-3785. Scott Jordan Sr. confirmed the phone number was in fact Scott Jordan Jr's cell phone number. Scott Jordan Sr. said he and his son went to AT&T Wireless to talk about getting on the same cell phone plan. Scott Jordan Sr. did not agree to the terms AT&T Wireless was offering and declined their offer. Scott Jordan Sr. did not authorize this account to be activated. AT&T Wireless refused to allow Scott Jordan Sr. to deactivate the account as Scott Jordan Jr. was also listed on the account.

•   In November 2014 Scott Jordan Sr. reported he heard a rumor that Scott Jordan Jr. was trying to sell the 2003 Chevrolet. On November 19th I was made aware by a co-worker of a 2003 Chevrolet 2500 for sale on Craigslist in Standish for $7900.00. The ad stated the truck had new front brakes installed this past summer which Scott Jordan Sr's truck did. Scott Jordan Jr. took the truck to Keith Smalley in July 2014 for front brake work. I researched the ad on November 20th, 2014 and found the contact phone number to be that of Scott Jordan Jr. The ad also showed it has been listed for 8 days.

•   Scott Jordan Jr. acting as the "AGENT" under the Maine Revised Statutes, Title 18-A, Artice 5, Part 9 and Title 18-B, Sections 802 to 807, and Title 18-B, Chapter 9. The Maine Uniform Power of Attorney Act explains the duty of the Agent. Acting as the Agent, Scott Jordan Jr. is not entitled to use Scott Jordan Sr's property to his own benefit.

SHIPPED DEC 16 2014

Under oath / affirmation, I state that the information contained in this affidavit is true to the best of my knowledge, information and belief and that I have probable cause to conduct the requested search and seizure on the basis of the information contained in all of the preceding and attached pages:

I request that a search warrant be issued which may be executed during the daytime (7:00a.m. to 9:00p.m.)

_____

Officer Lawrence W. Hesseltine
Waldoboro Police Department

Subscribed and sworn to by Officer Lawrence W. Hesseltine before me this 26 day of November 2014

_____

Judge, Maine District Court
Justice of the Peace

SHIPPED DEC 16 2014

# WALDOBORO POLICE DEPARTMENT

1600 Atlantic Highway
Waldoboro, Me. 04572
Phone: (207) 832-4500

### Search Warrant Inventory and Receipt

| AMOUNT | DESCRIPTION | WHERE LOCATED |
|---|---|---|
| 1 | 12-GUAGE SHOTGUN | BEDROOB |
| 2 | BOOKS OF CHECKS BELONG TO SCOTT JORDAN SR. | BEDROOM |
| 1 | 22-CAL REVOLVER | DAUGHTERS BEDROOM UNDER BED IN HARD CASE |
| 1 | PLASTIC CONTAINER CONTAINING MISC. SCOTT JORDAN SR. PAPERWORK | ENTRY-WAY |
| 1 | 2003 CHEVROLET 2500 PICK-UP TK. VIN# 1GCHK29U23E235649 | 661 WHITES BRID RD. - PARKING LO |
| | | |
| | | |
| | | |
| | | |
| | | |

Evidence Tech. Printed Name: _LARRY HESSELTINE_   Date _11-21-14_
Evidence Tech. Signature:

Primary Officer Printed Name: _LARRY HESSELTINE_
Primary Officer Signature:

SHIPPED DEC 1 6 2014

3 FIREARMS. ON 11/21/14 AT APPROX 0800 HRS A SEARCH WARRANT WAS EXECUTED ON SCOTT JORDAN RESIDENCE IN STANDISH WHERE THE VEHICLE AND TWO FIREARMS WERE RECOVERED. SCOTT JORDAN ADVISED THE OTHER FIREARM WAS LOANED TO A FRIEND AND ALL HIS FATHERS PERSONAL PROPERTY HAD BE SOLD. SCOTT JORDAN JR. WAS TAKEN INTO CUSTODY WITHOUT INCIDENT AND TRANSPORTED TO TBRJ.

STATE OF MAINE
LINCOLN, ss

SUPERIOR COURT
LOCATION: WISCASSET
DOCKET NO: SC-CR-2014-406

STATE OF MAINE

v.

INDICTMENT

SCOTT M JORDAN JR.
DOB: 7/8/1978
SIN:
17 Deer Hill N. Road
Standish, ME 04057
G: Male Ht: 6'00" Wt: 210 H: Black
E: Hazel R: White

COUNT 1: THEFT BY UNAUTHORIZED TAKING
COUNT 2: THEFT BY UNAUTHORIZED TAKING
COUNT 3: THEFT BY UNAUTHORIZED TAKING
COUNT 4: THEFT BY MISAPPLICATION OF PROPERTY
COUNT 5: THEFT BY UNAUTHORIZED TAKING

**THE GRAND JURY CHARGES:**

COUNT 1:

17-A M.R.S.A. §353(1)(B)(2)
Seq No: 8425
THEFT BY UNAUTHORIZED TAKING
CLASS B
ATNCTN 109620B001

On or about between May 15, 2014 and November 2, 2014, in Waldoboro, Lincoln County, Maine, **SCOTT M JORDAN JR.**, did commit theft by obtaining or exercising unauthorized control over a firearm or explosive device, property of Scott Jordan Sr., with the intent to deprive Scott Jordan Sr. of the property.

COUNT 2:

17-A M.R.S.A. §353(1)(B)(2)
Seq No: 8425
THEFT BY UNAUTHORIZED TAKING
CLASS B
ATNCTN 109620B002

On or about between May 15, 2014 and November 2, 2014, in Waldoboro, Lincoln County, Maine, **SCOTT M JORDAN JR.**, did commit theft by obtaining or exercising unauthorized control over a firearm or explosive device, property of Scott Jordan Sr., with the intent to deprive Scott Jordan Sr. of the property.



EXHIBIT
C

COUNT 3:

17-A M.R.S.A. §353(1)(B)(2)
Seq No: 8425
THEFT BY UNAUTHORIZED TAKING
CLASS B
ATNCTN 109620B003

On or about between May 15, 2014 and November 2, 2014, in Waldoboro, Lincoln County, Maine, **SCOTT M JORDAN JR.**, did commit theft by obtaining or exercising unauthorized control over a firearm or explosive device, property of Scott Jordan Sr., with the intent to deprive Scott Jordan Sr. of the property.

COUNT 4:

17-A M.R.S.A. §358(1)(B)(1)
Seq No: 8464
THEFT BY MISAPPLICATION OF PROPERTY
CLASS B
ATNCTN 109620B004

On or about between May 15, 2014 and November 2, 2014, in Waldoboro, Lincoln County, Maine, **SCOTT M JORDAN JR.**, did commit theft by obtaining property from anyone or personal services from an employee upon agreement, or subject to a known legal obligation, to make a specified payment or other disposition to a 3rd person or to a fund administered by **SCOTT M JORDAN JR.**, whether from that property or its proceeds or from his own property to be reserved in an equivalent or agreed amount, did intentionally or recklessly fail to make the required payment or disposition of the property or services and dealt with the property or services obtained or withheld as his own. The value of the property or services was more than $10,000.

COUNT 5:

17-A M.R.S.A. §353(1)(B)(1)
Seq No: 8424
THEFT BY UNAUTHORIZED TAKING
CLASS B
ATNCTN 109620B005

On or about between May 15, 2014 and November 2, 2014, in Waldoboro, Lincoln County, Maine, **SCOTT M JORDAN JR.**, did commit theft by obtaining or exercising unauthorized control over U.S. Currency, a vehicle, antiques, and personal belongings, property of Scott Jordan Sr., of a value more than $10,000, with the intent to deprive Scott Jordan Sr. of the property

DATED: 3/10/15

A TRUE BILL

FOREMAN

OFFICER: Lawrence Hesseltine
DEPT: Waldoboro PD
JW#: 14-6325
Initial Appearance: December 19, 2014

*+A 2815-10*
*15-018075*

**STATE OF MAINE**

SUPERIOR COURT

_Lincoln_ , ss.

Docket No. _CR-14-406_

DISTRICT COURT

Location _____

Docket No. _____

**STATE OF MAINE**

v.

_Scott Jordan JR_

Defendant

**DISMISSAL**

(M.R.Crim.P. 48(a))

Pursuant to Rule 48(a) of the Maine Rules of Criminal Procedure the (District Attorney for Prosecutorial District _____6_____ ) (~~Attorney General of the State of Maine~~) hereby dismisses the ~~indictment, information, complaint~~ or count(s) _one, two, three, four, five_ thereof against the defendant for the following reasons:

1) ☐ Defendant has pled to other charges:_____

_____
*(docket number(s) and count(s))*

2) ☐ Defendant has been indicted on this or a substituted charge:_____

_____
*(docket number(s) and count(s))*

3) ☐ Witness unavailable.

4) ☐ Insufficient evidence.

5) ☐ Defendant is a juvenile.

6) ☐ De Minimis.

7) ☐ Court has found Defendant not competent to stand trial and has ordered that all charges against Defendant in this matter are dismissed.

8) ☒ Other _The victim and Key witness in the ~~State~~_ _case for the State, Scott Jordan SR, has died._

Date:_9/14/15_____     _____
(Asst.) District Attorney / ~~Attorney General~~

**TO BE COMPLETED IF DISMISSED DURING TRIAL:**

I, _____, defendant, consent to the filing of the foregoing dismissal.

Date:_____     _____
Defendant

**EXHIBIT**

D